Andre LAVOIE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 71A03–0811–CR–573.

Court of Appeals of Indiana.

March 20, 2009.

Mark S. Lenyo, South Bend, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Tiffany N. Romine, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

FRIEDLANDER, Judge.

Andre Lavoie pleaded guilty, pursuant to a plea agreement, to class A felony Child Molesting,[1] class C felony Neglect of a Dependent,[2] class C felony Child Exploitation,[3] class C felony Criminal Confinement,[4] class D felony Battery,[5] and three counts of class D felony Intimidation.[6] Following his guilty plea, the trial court sentenced Lavoie to an aggregate term of seventy-one years in prison. Lavoie appeals his sentence, presenting the following restated issues for review:

1. Did the trial court abuse its discretion by imposing consecutive sentences on all eight counts?

1. Ind.Code Ann. § 35–42–4–3 (West, PREMISE through 2008 2nd Regular Sess.).

2. Ind.Code Ann. § 35–46–1–4 (West, PREMISE through 2008 2nd Regular Sess.).

3. I.C. § 35–42–4–4 (West, PREMISE through 2008 2nd Regular Sess.).

4. I.C. § 35–42–3–3 (West, PREMISE through 2008 2nd Regular Sess.).

5. I.C. § 35–42–2–1 (West, PREMISE through 2008 2nd Regular Sess.).

6. Ind.Code Ann. § 35–45–2–1 (West, PREMISE through 2008 2nd Regular Sess.).

2. Did the trial court abuse its discretion by imposing the maximum eight-year sentence for criminal confinement?

3. Is Lavoie's aggregate sentence inappropriate?

We affirm.

In February 2008, Roberta Lavoie reported to South Bend Police that she had evidence that her husband, Lavoie, had molested her grandson, T.H. Her information was based upon videotapes and microcassette tapes she found in Lavoie's gun safe while he was arrested on a warrant out of Elkhart County for an unrelated matter. Specifically, Roberta reported that the tapes depicted events that took place in 2003 when her grandson was four or five years old.

The charges in the instant case arose from the tape labeled "T.H. Meets the Monster Ghost" and dated November 8, 2003. *Appendix* at 78. The tape starts by Lavoie positioning the camera so that the majority of his living room is seen on the camera.[7] After T.H. comes into the room, Lavoie tells him that he has to run over to the neighbor's house but that he will be back soon. Lavoie turns on the television for T.H. and then leaves.

Lavoie's voice can then be heard from the television calling for T.H. T.H. walks toward the television, which cannot be seen on the camera. The voice says, "I'm the Flash. I'm the fastest man alive." *Id.* at 79. Then Lavoie, posing as the Flash on the television, tells T.H., "I warned you about the monster with the big red eyes." *Id.* He goes on to remind T.H. that he had been told to "poopy in his pants." *Id.* He asks T.H. why he has not listened and then tells the child that now he is afraid the Monster Ghost is going to get T.H. Lavoie/the Flash tells T.H. that there is only one thing T.H. can do, which is to quickly remove his clothes like he is going to take a bath. He then says, "Hurry, I hear the monster coming." *Id.* T.H. asks where he should hide, and Lavoie/the Flash directs the naked child to hide under a blanket on the couch.

After T.H. is fully under the blanket, Lavoie comes back into the room but is now dressed as the Monster Ghost. Lavoie is wearing a white sheet with a cutout for his head and a skeleton monster mask and gloves. He has duct tape in his hands. Lavoie, as the Monster Ghost, pulls T.H. off the couch, which causes T.H. to start screaming uncontrollably. Lavoie pushes T.H. to the floor while yelling, "Are you going to listen to me now? Do you want me to kill you? Don't cry." *Id.* The child immediately stopped crying until Lavoie strikes him on the naked buttocks ten times, causing pain. While out of range of the camera, Lavoie can be heard grunting and making monster-type noises. T.H. continues to scream and says, "What are you doing to me?" and "I can't move." *Id.*

Lavoie eventually leaves the room, while taking off his disguise. T.H. then stands up, still crying, screaming, and naked, and his hands can now be seen on the video duct taped behind his back. Breathing heavily, Lavoie comes back into the room as himself. T.H. immediately asks Lavoie why he did that, but Lavoie assures T.H. that he was at the neighbor's house. Lavoie consoles T.H. and removes the tape from his arms. While holding T.H. on his lap for several minutes, Lavoie intentionally exhibits T.H.'s genitals for the camera.

---

7. We note that the videotape in question is not included in the record before us. The facts, therefore, are taken from the detailed Affidavit in Support of Probable Cause filed by the deputy prosecuting attorney, based upon her viewing of the tape. The trial court similarly relied upon this affidavit at the sentencing hearing.

Lavoie asks T.H. if he knows why the monster tried to hurt him and if his "buddy Flash" tried to take care of him. *Id.* at 80. During their discussion, T.H. uses the word "poop", and Lavoie slaps him across the face and tells him to use the right word. T.H. says "poopy" and Lavoie praises him. Lavoie then pretends to answer the telephone and commences a conversation with the Monster Ghost. T.H. begins crying very hard after hearing Lavoie say, "No, you can't get him. What do you mean you're going to wait at his house?" *Id.* Lavoie then relays what the Monster Ghost is saying: "If you don't go poopy in your pants, he's going to kill you." *Id.* Lavoie explains that T.H. must poop in his pants each day so that the Monster Ghost will leave him alone. After further discussions with the Monster Ghost, Lavoie tells T.H. that the Monster Ghost is coming to the house. T.H. screams in fear. Lavoie directs T.H. to poop, pick the poop up with his hands, and put it in the potty. Lavoie repeatedly warns T.H. that the Monster Ghost is coming. Lavoie also says into the phone, "No, I don't want you waiting under his bed at night." *Id.* at 81. All the while T.H. is terrified and screaming.

Lavoie directs T.H. to put his underwear back on. Before he is allowed to do so, however, Lavoie check's T.H.'s buttocks. He gets back on the phone and tells T.H. that the monster is waiting for him and that the monster talked to T.H.'s mommy and his mommy said that the monster could have him. While T.H. is still screaming, Lavoie reports that the monster says that his mommy and daddy do not want him anymore. He then says that the monster is coming over and that T.H. better "poopy quick." *Id.*

Lavoie says to the monster, "He can't poopy. Don't come over! What does that mean, you'll bring your friends?" *Id.* He continues to urge the terrified and screaming T.H. to defecate so that the monster will not come. On the tape, T.H. is seen and heard straining and pushing, desperately trying to have a bowel movement. In the meantime, Lavoie knocks on the door when T.H. is not looking and says, "He's out there! Oh God, he's scary! Hurry and poopy!" *Id.*

After making sure to position T.H. in the camera's view, Lavoie leaves that room and comes back with some plastic and places it on the ground. T.H. tells Lavoie that he has peed and is trying to poop but cannot. T.H. is screaming while he is saying this and begging to go home. Lavoie reminds him that his mommy said the monster could have him. Lavoie gets back on the phone and then tells T.H. that the monster said he is going to cut T.H.'s " 'winky' off if he doesn't poopy." *Id.* at 82.

Lavoie tells T.H. that he loves him for trying so hard and directs T.H. to use his hands to pull the poopy out. Lavoie again moves T.H. into better camera view and has him on the plastic. He then says into the phone, "you've been watching him at school too? You're going to get him? No, he doesn't want you to cut his weiner off." *Id.* Lavoie tells T.H. that the monster says he is not trying hard enough, so T.H. pushes and strains with his fists balled up and his cheeks puffing out.

Lavoie then tells T.H. that he must pee in his pants at school. T.H. is specifically directed on what to say to his teacher, and Lavoie makes the child repeat it into the phone. Lavoie tells T.H. that if he does not comply, the monster says he is going to cut off T.H.'s winky and eat it. After further discussion, Lavoie gets T.H. to apologize and promise that he will not go "poopy in the potty" anymore. *Id.* Lavoie eventually tells the child that he does not have to pee in his pants everyday but that

he must poop in his pants everyday at school. Otherwise, according to Lavoie, the monster will cut off T.H.'s winky and eat it and T.H. will bleed to death.

After T.H. had been pushing and straining for at least twenty or thirty minutes, Lavoie offers to help T.H. by getting medicine that will help him poop. He leaves the room and comes back with a long, narrow tube with a larger, rounded area at the end. Lavoie directs T.H. to stand and then turns T.H. so that the child's back is toward the camera. Lavoie pulls down T.H.'s underwear and inserts the narrow tube into T.H.'s anus and squeezes the larger end. While telling T.H. to try to poop, Lavoie tells him how much he loves him for doing this. Lavoie asks, "does it feel good coming?" *Id.* at 83. After checking T.H.'s underwear, he tells him that there is not much there and that there could be more. He checks again after T.H. tries once more, and Lavoie then dials the phone and tells the monster that T.H. is doing great and had just pooped in his pants.

Thereafter, Lavoie warns T.H. that he cannot tell anyone about the Monster Ghost and specifically lists a number of individuals. T.H. promises not to tell. Lavoie further cautions that the Monster Ghost will kill T.H. and "make [him] into bones" if he says anything. *Id.* He directs that if T.H. gets into trouble at school for pooping his pants, he is to tell his teacher that his friend B. told him to do it. Lavoie inquires of the monster what will happen if T.H. does not follow these directions and then informs T.H. that the monster will cut his winky off. He then makes T.H. say into the phone that he is going to "peepee and poopy in his pants." *Id.*

At the conclusion of the tape, Lavoie makes T.H. take off his underwear while on the plastic sheet in front of the camera. After having T.H. show him the poop and pee in the underwear, Lavoie has T.H. turn around and point to his buttocks and say, "this is my poopy little butt." *Id.* The camera is then turned off.

On February 22, 2008, the State charged Lavoie with class A felony child molesting (Count I), class C felony neglect of a dependent (Count II), class C felony child exploitation (Count III), class C felony criminal confinement (Count IV), class D felony battery (Count V), and three counts of class D felony intimidation (Counts VI, VII, and VIII). On June 5, Lavoie pleaded guilty as charged pursuant to a plea agreement, which left sentencing to the trial court. In exchange, the State agreed "not to file any further charges based on the evidence that exists at this time." [8] *Appendix* at 48. At the conclusion of the subsequent sentencing hearing, the court sentenced Lavoie to consecutive terms of forty years on Count I, six years each on Counts II and III, eight years on Count IV, two years on Count V, and three years each on Counts VI through VIII. Thus, Lavoie received an aggregate sentence of seventy-one years in prison. He now appeals his sentence on various grounds.

1.

Lavoie argues that the trial court abused its discretion by imposing consecutive sentences. He initially claims the court failed to set forth specific reasons for imposing consecutive sentences. Somewhat inconsistently, he also claims the trial court improperly considered the seriousness and heinousness of the crimes as an

8. At the plea hearing, defense counsel acknowledged the possibility that Lavoie "would have been facing substantial other time, if the state followed through and filed [additional] charges based on what it knows." *Transcript of Guilty Plea Hearing* at 4.

aggravating factor to support the imposition of consecutive sentences.[9]

■■ The decision to impose consecutive or concurrent sentences is within the trial court's sound discretion and is reviewed only for an abuse of discretion. *Williams v. State*, 891 N.E.2d 621 (Ind.Ct. App.2008). Although a trial court is required to state its reasons for imposing consecutive sentences, it may rely on the same reasons to impose a maximum sentence and also impose consecutive sentences. *Id. See also Smith v. State*, 770 N.E.2d 818, 821 (Ind.2002) ("trial court is not obligated to identify the aggravators that support consecutive sentences separately from the factors that support the sentence enhancement"). Further, a single aggravating circumstance may support the imposition of consecutive sentences. *Hampton v. State*, 873 N.E.2d 1074 (Ind. Ct.App.2007).

■■ Lavoie seems to acknowledge that the trial court's sentencing decision was influenced primarily by the heinous nature of his offenses.[10] As will be discussed more fully below, there is no disputing that the nature and circumstances of Lavoie's crimes against his five-year-old grandson were particularly horrific. Contrary to his assertion on appeal, it is well-settled that the nature and circumstances of a crime is generally a proper aggravating circumstance.[11] *See McCann v. State*, 749 N.E.2d 1116 (Ind.2001); *Hampton v. State*, 873 N.E.2d 1074. Therefore, we find no abuse of discretion in this regard.

2.

■■ With respect to his sentence for criminal confinement, Lavoie argues that the trial court abused its discretion by imposing the maximum sentence of eight years. In this regard, he claims that trial court improperly relied upon an element of the offense when it noted that he used duct tape to confine T.H. He also claims that the trial court failed to consider certain mitigating circumstances.

■■ Sentencing determinations rest within the trial court's sound discretion. *Cotto v. State*, 829 N.E.2d 520 (Ind.2005). It is within the trial court's discretion to determine whether a presumptive sentence [12] will be enhanced in light of aggra-

9. Lavoie also discusses whether the charges all arise from a single episode of criminal conduct. In the end, however, he acknowledges that the consecutive sentencing limitation as set forth in Ind.Code Ann. § 35–50–1–2(c) (West, PREMISE through 2008 2nd Regular Sess.) is inapposite in this case.

10. The court stated that this was the "most horrific individual molest" that it had ever come across. *Transcript of Sentencing Hearing* at 16. Balanced against this, the court recognized that Lavoie had accepted responsibility by pleading guilty. Additionally, the court noted in aggravation that Lavoie violated a position of trust and in mitigation that he had only a minor prior criminal history.

11. Lavoie directs us to *Hampton v. State*, 719 N.E.2d 803 (Ind.1999), for the proposition that the seriousness of the crime may not support consecutive sentences. After review-

ing the cases upon which *Hampton* relies, however, we believe *Hampton* stands for the proposition that a trial court may consider as aggravating that a reduced sentence might depreciate the seriousness of a crime only when it contemplates the imposition of a sentence less than the presumptive (now advisory). *See Mitchem v. State*, 685 N.E.2d 671 (Ind.1997). This factor is not at issue here.

12. Our sentencing statutes now provide for "advisory" rather than "presumptive" sentences. The former sentencing statutes apply here, however, because Lavoie committed the crimes before the substantial revision of our sentencing scheme. *Gutermuth v. State*, 868 N.E.2d 427, 431 n. 4 (Ind.2007) ("sentencing statute in effect at the time a crime is committed governs the sentence for that crime").

vating factors. *Soliz v. State*, 832 N.E.2d 1022 (Ind.Ct.App.2005), *trans. denied.*

> If the trial court relies on aggravating or mitigating circumstances to enhance or reduce the presumptive sentence, it must (1) identify all significant mitigating and aggravating circumstances; (2) state the specific reason why each circumstance is determined to be mitigating or aggravating; and (3) articulate the court's evaluation and balancing of the circumstances.

*Cotto v. State*, 829 N.E.2d at 523–24.

■ While a trial court may not use a material element of the offense as an aggravating circumstance, the court may properly find the nature and circumstances of the offense to be aggravating. *Hall v. State*, 870 N.E.2d 449 (Ind.Ct.App.2007), *trans. denied.* In doing so, however, the court may only take into consideration facts not needed to prove the elements of the offense. *Id.* (citing *McCann v. State*, 749 N.E.2d 1116).

In sentencing Lavoie for confinement, the court specifically observed as aggravating (in addition to Lavoie's violation of his position of trust) that "the nature of the confinement ... involved taping this child with duct tape, as well as confining him to a room". *Transcript of Sentencing Hearing* at 18. Lavoie's act of taping his five-year-old grandson's hands behind his back was an additional aggravating fact beyond what was necessary to support his conviction. To be sure, at the guilty plea hearing, Lavoie admitted that T.H. repeatedly requested to leave and go home and that he (Lavoie) kept T.H. there without his consent. The trial court did not abuse its discretion by considering the nature of the confinement to be aggravating.

Lavoie also challenges the trial court's consideration of mitigating circumstances. He claims the trial court failed to consider his guilty plea or his long-standing employment throughout his adult life.

We cannot agree that the trial court failed to consider Lavoie's guilty plea as a mitigating circumstance. In its sentencing statement, the trial court discussed the heinous nature of Lavoie's offenses and acknowledged that this aggravator must be balanced against the fact Lavoie accepted responsibility by pleading guilty. The court indicated that it was required by law to give him credit for this mitigating circumstance. While the court did not expressly note this mitigator in its discussion of each individual offense, we are confident that it was considered by the trial court in its overall sentencing of Lavoie.

■ With respect to his employment history, Lavoie simply asserts that his "long-standing employment throughout his adult life ... was clearly supported by not only the Presentence Report but the defense counsel's remarks at the time of sentencing." *Appellant's Brief* at 15. "An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is *both* significant and clearly supported by the record." *Anglemyer v. State*, 868 N.E.2d 482, 493 (Ind.2007), *clarified on reh'g*, 875 N.E.2d 218 (emphasis supplied). Regardless of whether this proposed mitigating circumstance was supported by the record,[13] Lavoie has wholly failed to argue, let alone establish, that it is significant. *See Newsome v. State*, 797 N.E.2d 293, 301 (Ind.Ct.App.2003) ("[m]any people are gainfully employed such that this would not require the trial

13. We note that the presentence investigation report does not indicate how long he had worked for the listed employer prior to his arrest. Further, Lavoie did not testify at the sentencing hearing.

court to note it as a mitigating factor"), *trans. denied.*

### 3.

█ Finally, Lavoie argues that his aggregate sentence of seventy-one years in prison is inappropriate. We have the constitutional authority to revise a sentence if, after consideration of the trial court's decision, we conclude the sentence is inappropriate in light of the nature of the offense and character of the offender. *See* Indiana Appellate Rule 7(B); *Anglemyer v. State*, 868 N.E.2d 482. Although we are not required under App. R. 7(B) to be "extremely" deferential to a trial court's sentencing decision, we recognize the unique perspective a trial court brings to such determinations. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind.Ct.App.2007). On appeal, Lavoie bears the burden of persuading us that his sentence is inappropriate. *Rutherford v. State*, 866 N.E.2d 867.

The facts as set out in detail above reveal the particularly depraved and heinous nature of Lavoie's offenses. It is evident that Lavoie meticulously planned out the hour and a half of terror he inflicted on his five-year-old grandson by creating costumes and characters and setting up cameras. Lavoie remained undeterred from his vile mission despite his grandson's repeated pleas and screams of terror. At the plea hearing, Lavoie admitted that he not only caused T.H. physical pain but also engaged in a form of psychological torture. Under the circumstances, we find it ludicrous for Lavoie to argue on appeal that these events caused T.H. no long-lasting psychological damage. On the contrary, T.H.'s mother testified at the sentencing hearing and indicated that Lavoie's actions have "ruined [T.H.'s] childhood" and that at the age of ten, T.H. is scared of many things and still cannot sleep without the light on in his room. *Transcript of Sentencing Hearing* at 5. Further, as the crime had only been uncovered less than five months prior to sentencing, the full extent of psychological damage to the child had likely yet to be uncovered. Finally with respect to the nature of the offense, we observe Lavoie's claim on appeal that this was an isolated incident. We are highly skeptical of this assertion based upon the nature of this offense as well as the implication in the record that there were other tapes and other uncharged misconduct. Regardless, we find the nature of Lavoie's offenses to be extremely aggravating.

█ Turning to his character, Lavoie asserts that he expressed remorse and pleaded guilty to all charges. Further, he notes that at the age of forty-eight he had only a minor criminal record (three misdemeanor convictions) and had a steady work history. Initially, while we acknowledge that Lavoie's prior criminal record was minor and entitled to some mitigating weight, we fail to see where his claim that he was steadily employed throughout his adult life is clearly established in the record. Moreover, we observe that the trial court was seemingly unconvinced by Lavoie's expressions of remorse, which were contained in a letter rather than expressed in open court. Our review of the letter supports the trial court's assessment that Lavoie appeared to be minimizing his culpability.[14] Finally,

---

14. In his six-page letter, Lavoie seems to indicate that at the time he committed the offenses he did not know his actions were wrong. He notes that he was ignorant, felt lonely, and was going through turmoil in his personal and professional life at the time. Moreover, he refers to the crimes against T.H. as "a few moments of stupidity and confused thinking." *Appendix* at 12. He also claims that his relationship with T.H. has somehow

with respect to the guilty plea, we acknowledge, as did the trial court, that a defendant who pleads guilty deserves to have at least some mitigating weight extended to the guilty plea in return. *See Cotto v. State*, 829 N.E.2d 520. The extent to which a guilty plea is mitigating, however, will vary from case to case. *See Hope v. State*, 834 N.E.2d 713 (Ind.Ct.App.2005). As has been frequently observed, "a plea is not necessarily a significant mitigating factor." *Cotto v. State*, 829 N.E.2d at 525. Specifically, "a guilty plea does not rise to the level of significant mitigation where the defendant has received a substantial benefit from the plea or where the evidence against him is such that the decision to plead guilty is merely a pragmatic one." *Wells v. State*, 836 N.E.2d 475, 479 (Ind. Ct.App.2005), *trans. denied.* In the instant case, Lavoie pleaded guilty as charged. While his plea is certainly entitled to some mitigating weight, we observe that he did benefit from the plea in that no additional charges would be filed based upon the evidence recovered from his home. Moreover, it is apparent that Lavoie's plea was a pragmatic decision in light of the overwhelming evidence against him, as everything was plainly documented on videotape.

Lavoie faced a maximum sentence of eighty-six years in prison. In balancing the heinous nature of Lavoie's actions against his lack of a significant criminal history and his guilty plea, the trial court arrived at an aggregate sentence of seventy-one years. In light of Lavoie's character and the nature of his crimes against T.H., we conclude that this sentence is not inappropriate.

Judgment affirmed.

MAY, J., and BRADFORD, J., concur.

been repaired, though T.H.'s mother indicated otherwise. In response to the letter, the trial court stated:

> And I read your letter, and I thought, I don't think Mr. Lavoie quite understands what he did. There were expressions of remorse, but there also was some sort of belief that you had repaired your relationship with this little boy. There seems to be some sort of sense that—Well you talked about it as only one incident, and perhaps that is all. But ... part of the [plea] bargain ... is that nothing else would be charged. So I don't know if this is the only incident or not.
>
> But my sense was that, in your mind, you're kind of minimizing or starting to minimize what you did. So that you have a frame of reference for what you did, I do want to share this with you. I prosecuted child molesting cases for over a decade. I tried probably scores of them. I charged probably hundreds of them, and I reviewed case reports on probably thousands. None, none was as awful as horrific as what you did to that little boy. ...
>
> So if there ever comes a time that you are sitting in your prison cell, and you think it wasn't that bad, I want you to know, it was that bad. What you did to that little boy is beyond comprehension.

*Transcript of Sentencing Hearing* at 15–17.