## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 04 2015, 9:29 am

CLERK
of the supreme court,
court of appeals and
tax court

---

ATTORNEY FOR APPELLANT

Laura M. Taylor
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Brian Reitz
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Jerome Sumlin,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 4, 2015

Court of Appeals Cause No.
49A02-1406-CR-434

Appeal from the Marion Superior Court
Honorable Steven Eichholtz, Judge
David Seiter, Commissioner
Cause No. 49G20-1303-FA017399

---

**Friedlander, Judge.**

[1] Following a bench trial, Jerome Sumlin was convicted of Conspiracy to Commit Dealing in a Narcotic Drug, a class B felony;  Dealing in a Narcotic Drug, a class B felony;  and Possession of a Firearm by a Serious Violent Felon,

a class B felony.   Sumlin was sentenced to an aggregate term of twenty-five years, with seventeen years executed, four years in Community Corrections, and four years suspended with one day of probation.  Sumlin presents two issues for our review:

1.  Is the evidence sufficient to sustain his conviction for dealing in a narcotic drug?
2.  Did the trial court abuse its discretion when it ordered the sentence for possession of a firearm conviction to be served consecutively with the narcotic-related sentences?

We affirm.

In November 2012, Officer Stephen Spears of the Indianapolis Metropolitan Police Department (IMPD) began an investigation into a narcotics ring that was believed to be operating out of Room 315 of the Always Inn on the east side of Indianapolis.  During Officer Spears's initial investigation, he developed a suspect list that included Sumlin, Danny Wilcox,  and Kristie Harris.  Officer Spears also obtained Sumlin's home address and vehicle information.  Officer Spears then conducted surveillance of both locations for the next several months.  Officer Spears ultimately decided to conduct a controlled buy from Sumlin, so he secured the services of Alan Halk, a confidential informant who had known Sumlin for about a year.

On February 28, 2013, Officer Spears, along with Halk and Ernie Witten, an undercover IMPD detective, set up a controlled buy from Sumlin at the Always Inn location.  Detective Witten was in the car with Halk as the two drove to

the Always Inn. During the controlled buy, Halk was to attempt to purchase two grams of heroin for $270, which money was provided to him by Officer Spears. Upon arrival at the Always Inn, Halk got out of his car and got into Sumlin's car, which was parked outside of Room 315. Halk was in Sumlin's vehicle for approximately six minutes. Halk then rejoined Detective Witten, who had remained in Halk's car, and drove to a prearranged location to meet up with Officer Spears. Sumlin, accompanied by Wilcox, left the Always Inn in Sumlin's vehicle at approximately the same time, but they headed in the opposite direction of Halk.

[5] During his debriefing with Officer Spears, Halk explained that Sumlin did not have enough heroin to fulfill his purchase request. Halk paid for and received what heroin Sumlin had, and Sumlin agreed to meet Halk an hour and a half later at a prearranged location on Udell Street, also in Indianapolis, to give him more heroin. Officer Spears followed the same controlled-buy procedures for the second meeting, during which Halk received two additional baggies containing heroin. Sumlin handed the bags of heroin to Wilcox and Wilcox handed the bags to Halk. Halk then gave Wilcox $120, and Wilcox in turn gave the money to Sumlin because "[i]t was his." Transcript at 108.

[6] After the first controlled buy, Officer Spears maintained his surveillance of the Always Inn. Officer Spears observed Sumlin come and go from Room 315 on nearly a daily basis. On several occasions, Officer Spears followed Sumlin, which led him to many locations, including Sumlin's home.

[7] On March 13, 2013, at approximately 8 p.m., Officer Spears arranged to conduct a second controlled buy and again used Halk's services as a confidential informant. Initially, an attempt was made to buy heroin from Sumlin at the Always Inn, but Sumlin was not present in Room 315 when Halk arrived. Halk returned to a predetermined location and met up with Officer Spears. Shortly after midnight, on March 14, 2013, Halk reestablished contact with Sumlin and arrangements were made by Officer Spears to complete the controlled buy at that time.

[8] Halk arrived back at Room 315. Officer Spears maintained visual contact of Halk until he entered Room 315. Halk was inside the room for approximately three to four minutes. Harris testified that she was present in the room that night and observed Halk give money to Sumlin, who, in exchange, gave Halk between a half gram and a gram of heroin. After he exited Room 315, Halk met up with Officer Spears and immediately turned over the heroin he had just purchased from Sumlin. Officer Spears maintained visual contact of Halk after he left Room 315 until they met at the prearranged location.

[9] Officer Spears took the information he had received from his ongoing surveillance and the different controlled buys and applied for search warrants for both Room 315 at the Always Inn and Sumlin's home. The search warrants were executed simultaneously around 11 a.m. on March 14, 2013. Officers recovered a bag of heroin, a digital scale, storage sandwich bags, nine syringes, a bag containing a cutting agent, a small vial, and a spoon containing residue from Room 315. The scale, syringes, and spoon tested positive for heroin.

Officers recovered two digital scales, one vial, and a loaded two-shot .38 caliber Derringer pistol from Sumlin's home. The two scales also tested positive for heroin.

On March 20, 2013, the State charged Sumlin with eighteen counts. A bench trial held on May 15, 2014, resulted in convictions for class B felony conspiracy to commit dealing in a narcotic drug (Count X), class B felony dealing in a narcotic drug (Count XIV), and class B felony possession of a firearm by a serious violent felon (Count XX). On May 27, 2014, the trial court sentenced Sumlin to fifteen years executed on Count X, fifteen years executed on Count XIV to be served concurrently with the sentence on Count X, and ten years on Count XX to be served consecutively to the sentences on Counts X and XIV. The ten-year sentence on Count XX was to be served with two years in the Department of Correction, four years in Community Corrections, and four years suspended. Sumlin now appeals.

1.

Sumlin argues that the State failed to prove beyond a reasonable doubt that he committed dealing in a narcotic drug. In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. Atteberry v. State, 911 N.E.2d 601 (Ind. Ct. App. 2009). Instead, we consider only the evidence supporting the conviction and the reasonable inferences to be drawn therefrom. Id. If there is substantial evidence of probative value from which a reasonable trier of fact could have

drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, then the judgment will not be disturbed. *Baumgartner v. State*, 891 N.E.2d 1131 (Ind. Ct. App. 2008).

[12] In order to convict Sumlin of dealing in a narcotic drug as a class B felony, the State was required to prove that Sumlin knowingly possessed heroin with intent to deliver it to another person. See I.C. § 35-48-4-1. As alleged in Count XIV, the charge and subsequent conviction for dealing in a narcotic drug stemmed from the controlled buy that took place on or about March 14, 2013. Sumlin maintains that Wilcox's testimony failed to connect Sumlin to the controlled buy that occurred on that date and that the record otherwise "lacks evidence" that proves Sumlin delivered the heroin to Halk on March 14. Appellant's Brief at 4.

[13] Sumlin completely overlooks Harris's testimony that on the night of March 13, Halk came to Room 315 at the Always Inn and "[h]e gave [Sumlin] the money and [Sumlin] gave him the drugs." Transcript at 123. Harris confirmed that the "drugs" she was referring to were heroin and further testified that she thought Sumlin gave Halk between a half gram and a gram of heroin during that encounter. Further, Officer Spears testified that, using Halk as a confidential informant, he conducted a controlled buy during the night of March 13-14. Officer Spears maintained visual contact with Halk as he approached Room 315 at the Always Inn. Halk exited Room 315 three to four minutes later and met up with Officer Spears at a prearranged location where he gave Officer Spears the heroin he had just purchased. From this evidence, a reasonable trier

of fact could have concluded beyond a reasonable doubt that Sumlin possessed heroin with intent to deliver, and in fact did deliver, to another person. The evidence is sufficient to sustain Sumlin's conviction for dealing in a narcotic drug as a class B felony.

2.

Sumlin argues that the trial court abused its discretion in ordering the ten-year sentence for possession of a firearm by a serious violent felon to be served consecutively to the sentences imposed on the narcotic-related offenses. Specifically, Sumlin argues that "[n]one of Sumlin's crimes involved violence or were witnessed by children." Appellant's Brief at 5.

The decision to impose consecutive or concurrent sentences is within the trial court's discretion and is reviewed only for an abuse of discretion. Lavoie v. State, 903 N.E.2d 135 (Ind. Ct. App. 2009). Further, when a trial court imposes consecutive sentences where not required to do so by statute, we will examine the record to insure that the court explained its reasons for selecting the sentence it imposed. See Harris v. State, 716 N.E.2d 406 (Ind. 1999).

First, with regard to his suggestion that the trial court abused its discretion because it imposed consecutive sentences for crimes that involve violence, we find such to be without merit. To be sure, Sumlin's sentence does not violate Ind. Code Ann. § 35-50-1-2(c) (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly), which provides that "except for crimes

of violence" the imposition of consecutive sentences "for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted." Sumlin was convicted of three class B felonies. The advisory sentence for a class A felony was thirty years. See Ind. Code Ann. § 35-50-2-4(a) (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly). Sumlin's aggregate sentence is only twenty-five years and thus within the statutory range.

[17] Sumlin also seems to suggest that the fact that no children witnessed the crimes goes against imposition of consecutive sentences. Sumlin provides no further explanation in this regard. Suffice it to say that the fact that children may not have actually witnessed the drug transaction between Sumlin and the confidential informant does not take away from the fact that Sumlin's heroin sales harmed the community and potentially exposed children to the perils and dangers of drug trafficking. See Manigault v. State, 881 N.E.2d 679, 690 (Ind. Ct. App. 2008) (noting that enhanced penalties for controlled substance violations within 1,000 feet of schools are "rationally related to the legitimate governmental interest of protecting children from the perils and dangers associated with drug trafficking").

[18] Aside from Sumlin's arguments, we note the trial court explained that it was ordering the sentence for possession of a firearm by a serious violent felon to be served consecutively to the other sentences because the court found the offenses

to be "separate acts." Transcript at 205. We cannot say the trial court's consideration in this regard was improper. We therefore conclude that the trial court did not abuse its discretion in imposing consecutive sentences.

[19]     Judgment affirmed.


Kirsch, J., and Crone, J., concur.