## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 23 2015, 9:20 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana
Indianapolis, Indiana

Paula J. Beller
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles E. Nichols, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff* | December 23, 2015 <br><br> Court of Appeals Case No. 24A01-1505-CR-401 <br><br> Appeal from the Franklin Circuit Court <br><br> The Honorable Clay M. Kellerman, Judge <br><br> Trial Court Cause No. 24C02-1404-FD-239, 24C02-1412-CM-1454, and 24C02-1501-CM-2 |

**Altice, Judge.**

## Case Summary

Charles E. Nichols pled guilty to class D felony Domestic Battery,[1] class D felony Strangulation,[2] and two counts of class A misdemeanor Invasion of Privacy.[3] The trial court sentenced him to an aggregate term of five years in prison, with 180 days suspended to probation. On appeal, Nichols contends that the trial court abused its discretion with regard to finding mitigating and aggravating circumstances. He also challenges his sentence as inappropriate.

We affirm.

## Facts & Procedural History

On February 20, 2014, Nichols was convicted of battering his wife, D.N. He was sentenced to 365 days in jail with 305 days suspended to probation for this domestic battery. Accordingly, he would have been released to probation in late March of that year. As a condition of probation, Nichols was ordered to complete anger management counseling.

Within two weeks of his release, Nichols attacked D.N. again. This time he grabbed her by the hair and then put his hands around her neck and began

---

[1] Ind. Code § 35-42-2-1.3. Effective July 1, 2014, this offense was reclassified as a Level 6 felony. Because Nichols committed the offense prior to that date, it retains its prior classification as a class D felony.

[2] I.C. § 35-42-2-9(b)(1). Effective July 1, 2014, this offense was reclassified as a Level 6 felony. Because Nichols committed the offense prior to that date, it retains its prior classification as a class D felony.

[3] Ind. Code § 35-46-1-15.1.

choking her until she was unable to breathe. Her neck was bruised as a result of the force Nichols used to choke her. The abuse was not reported to police until April 9, 2014, when one of D.N.'s coworkers noticed the injuries and intervened.

[5] The State charged Nichols, in cause number 24C02-1404-FD-239 (FD-239), with domestic battery and strangulation, both as class D felonies. He was arrested on April 11, 2014, and subsequently ordered by the trial court to have no contact with D.N. On June 10, 2014, Nichols bonded out of jail.

[6] Despite the no contact order, Nichols and D.N. attempted reconciliation following his release. They divorced, however, in July 2014. Nichols continued to violate the no contact order by calling and coming over to D.N.'s home "all the time." *Transcript* at 19. He refused to leave on several occasions, despite pleas from D.N. On December 17, 2014, police arrested Nichols when he refused to leave D.N.'s trailer. He bonded out of jail and returned to her trailer the next day, leaving only when she called 911.

[7] These two incidents resulted in separate charges for invasion of privacy filed under cause numbers 24C02-1412-CM-1454 (CM-1454) and 24C02-1412-CM-1455 (CM-1455). On December 31, 2014, the State moved to revoke Nichols's bond in FD-239 as a result of the violations.

[8] Undeterred, Nichols returned to D.N.'s trailer on January 2, 2015, while still out on bond. D.N. went to a neighbor's home and called 911. Nichols was again arrested, resulting in a third charge for invasion of privacy filed under

cause number 24C02-1501-CM-2 (CM-2). Nichols continued to call D.N. from jail after his arrest, but she refused his calls.

[9] At the bond revocation hearing on January 29, 2015, D.N. testified regarding Nichols's history of violence toward her. She also indicated that he had made recent threats against her and that she feared for her safety and was "terrified of him." *Id.* at 28. Accordingly, the court revoked bond in FD-239.

[10] On March 11, 2015, the State filed a motion for leave to amend the information in FD-239 to include a habitual offender count. The State explained in the motion that it had not sought to charge Nichols as a habitual offender earlier due to plea negotiations that included an offer by the State to forego such a filing. With Nichols's jury trial on the horizon, the State indicated that a plea agreement now appeared unlikely. The court granted the State's motion for leave to amend the information. The State, however, did not file the amendment before Nichols decided to plead guilty to the FD-239 charges of domestic battery and strangulation on April 2, 2015.

[11] Thereafter, on April 23, 2015, combined plea and sentencing hearings were conducted in FD-239, CM-1454, CM-1455, and CM-2. Pursuant to a plea agreement, Nichols pled guilty to the invasion of privacy charges in CM-1454 and CM-2. The State agreed to dismiss CM-1455 in exchange. The trial court sentenced Nichols to one year executed on each of the two misdemeanor convictions. The court ordered these sentences to be served consecutively because the offenses were committed while Nichols was out on bond. In FD-

239, the court sentenced Nichols on each count to three years in prison with 180 days suspended to probation. The court ordered these sentences to be served concurrently with each other but consecutively to the misdemeanor sentences.

## Discussion & Decision

[12] Nichols challenges his sentence on two grounds. First, he contends that the trial court abused its discretion in its determination of aggravating and mitigating circumstances. Second, he argues that his aggregate sentence of five years with all but 180 days executed is inappropriate in light of the nature of his offenses and his character. We will address each in turn.

## 1. Abuse of Discretion

[13] Sentencing decisions rest within the sound discretion of the trial court and are reviewed by this court only for an abuse of discretion. *Sandleben v. State*, 29 N.E.3d 126, 135 (Ind. Ct. App. 2015), *trans. denied*. An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* When imposing a sentence for a felony, a trial court must enter a sentencing statement including reasonably detailed reasons for imposing a particular sentence. *Id.* A trial court abuses its discretion when it fails to issue a sentencing statement, gives reasons for imposing a sentence that are not supported by the record, omits reasons clearly

supported by the record and advanced for consideration, or considers reasons that are improper as a matter of law. *Id.*

[14] The trial court issued the following sentencing statement with respect to the felony convictions:

> [S]everal things concern me about this case. Number 1, it, it was a very violent act, um, to someone you purport to, to love. That's concerning. Um, you had multiple aggravators in this case, an extensive criminal history, a presentence investigation indicates that you have a very high risk to reoffend. There's substance abuse issues. Um, and another thing that concerns me a little bit is all I keep hearing is blame. You're blaming her for this. Or, you know what really happened. Or, almost blaming the Court or the system for not providing you the help or the resources. I look at your criminal history, you've been a [sic] probation a lot. And you recognize that you have a drug and alcohol problem but I can't see that you've ever taken any ownership in it and said, "I'm going to do something about it." I can't make you not drink. The prosecutor can't do that. That's solely up to you. … [Y]ou said, "I don't know what the Court wants me to do." Well, I can tell you what this Court wants you to do. Don't be here anymore. You know, don't commit…any criminal offenses. Don't strangle somebody that you say you love. That's what I'm asking you to do as a Court. Um, so, the Court's best option that I can find to help you, help yourself, would be to place you in the Department of Corrections [sic] and make you eligible for Purposeful Incarceration so hopefully, whatever programs are available…you take advantage of.

*Transcript* at 72-73.

[15] Nichols initially challenges the portion of the trial court's statement indicating that he was blaming the victim for his crimes. There is ample support in the

record for the court's statement in this regard. The most brazen example is the following from Nichols's testimony at the sentencing hearing:

> [Nichols]: I'm sorry. I'm sorry that I hurt her. I'm sorry that I – I hurt myself more than I hurt her. 'Cause I'm the one in jail. She ain't in jail. She's still running around, uh, doing whatever she wants to do.
>
> ****
>
> [State]: What does anything of that have to do with smacking her around?
>
> [Nichols]: Well, the truth know, your Honor, er Sir, Jesus Christ and me and her knows what happened. And she knows that she wasn't smacked around. It was hickeys on her neck. She knows that. And she – karma will come around and she knows what happened and so do I. Yes, I got a temper. Yes I do. I admit that. I admit it. Just like I admit I love her with all my heart still today. Even though I did two hundred and some days in jail. Maybe I deserve it. Maybe that's the reason why Jesus Christ put me on this Earth for was to go to prison.

*Id*. at 69-70. The trial court did not err in recognizing Nichols's attempts to blame the victim.

[16] Nichols also argues that the trial court abused its discretion by noting that he committed an act of violence against a woman he purported to love. He claims this amounts to the improper use of an element of the domestic battery offense as an aggravating circumstance.

[17] It is clear that a trial court may not rely on a material element of the offense when imposing a sentence greater than the advisory absent something unique about the circumstances that would justify deviating from the advisory sentence. *See Gomillia v. State*, 13 N.E.3d 846, 852-53 (Ind. 2014). What is not clear here is that the trial court utilized Nichols's marital status with the victim as an aggravating circumstance. The trial court's reference to Nichols harming someone he purported to love appears to be in direct response to Nichols's testimony at the sentencing hearing. Moreover, the trial court made this brief observation and then turned to the aggravating circumstances it found, which did not include their domestic relationship. We find no error in this regard.

[18] Finally, with respect to his abuse of discretion argument, Nichols argues that the trial court failed to consider his guilty plea as a mitigating circumstance. Nichols asserts that he received no benefit for his guilty plea in FD-239[4] and, therefore, it should have been given substantial mitigating weight.

[19] A defendant who pleads guilty deserves to have at least some mitigating weight extended in return. *Lavoie v. State*, 903 N.E.2d 135, 143 (Ind. Ct. App. 2009). "But an allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is not only supported by the record but also that the mitigating evidence is significant."

---

[4] Nichols also argues this mitigating circumstance with respect to the misdemeanor cases, CM-1454 and CM-2. This is a perplexing argument given the fact that a trial court is not required to enter a sentencing statement when imposing a sentence for a misdemeanor offense.

*Anglemyer v. State*, 875 N.E.2d 218, 220-21 (Ind. 2007) (opinion on rehearing). The extent to which a guilty plea is mitigating will vary from case to case, and a plea will not necessarily constitute a significant mitigating circumstance in every case. *Lavoie*, 903 N.E.2d at 143. Specifically, "a guilty plea does not rise to the level of significant mitigation where the defendant has received a substantial benefit from the plea or where the evidence against him is such that the decision to plead guilty is merely a pragmatic one." *Wells v. State,* 836 N.E.2d 475, 479 (Ind. Ct. App. 2005), *trans. denied.*

[20] Even though the State had not filed its amended information adding the habitual offender count, it is clear that Nichols avoided this significant sentencing enhancement by pleading guilty. He did so shortly after the trial court granted the State leave to file the amendment. Consequently, Nichols received a substantial benefit as a result of the plea, and he has not demonstrated that his guilty plea was a significant mitigating circumstance. We therefore conclude that the trial court did not abuse its discretion by omitting reference to the plea when imposing sentence.

## 2. Appropriateness of Sentence

[21] Pursuant to Ind. Appellate Rule 7, we may revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Inman v. State*, 4 N.E.3d 190, 203 (Ind. 2014) (quoting App. R. 7). Our review in this regard is "very deferential" to the trial court. *See Conley v.*

*State*, 972 N.E.2d 864, 876 (Ind. 2012). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[22] "The principal role of such review is to attempt to leaven the outliers." *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013). It is not our goal in this endeavor to achieve the perceived "correct" sentence in each case. *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014). Accordingly, "the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original). Nichols bears the burden of persuading us that his sentence is inappropriate. *See Conley*, 972 N.E.2d at 876.

[23] Here, the trial court imposed the maximum sentence of one year executed for both of the class A misdemeanor convictions. *See* Ind. Code § 35-50-3-2. The court also imposed the maximum term for both of the class D felonies – three years in prison – but suspended 180 days and ordered the sentences to be served concurrently with each other. *See* I.C. § 35-50-2-7(a) (class D felonies carry a sentencing range of six months to three years, with an advisory sentence of one and one-half years). The misdemeanor sentences were statutorily required to be served consecutively to one another and to the FD-239 sentence because he committed them while out on bond. *See* I.C. § 35-50-1-2(e)(2)(B).

[24] We turn first to the nature of the offenses. On appeal, Nichols makes excuses for his multiple violations of the no contact order and argues that D.N. had no lasting injury as a result of the battery and strangulation. His arguments are not persuasive. Our review of the evidence reveals a complete lack of restraint by Nichols. Shortly after being released to probation, Nichols went back to battering his wife; this time in a particularly violent attack that left visible injuries to her that lasted over a week. Then, while out on bond in FD-239, he violated the no contact order multiple times – even after the victim pleaded for him to leave her residence and after being arrested for violating that same order. In sum, Nichols has failed to provide even the slightest evidence, much less compelling evidence, portraying the nature of his offenses in a positive light.

[25] His character is even less helpful to his cause. As discussed previously, despite entering guilty pleas, Nichols exhibited no genuine remorse or acceptance of responsibility for his offenses. Further, his criminal history is aggravating with eight felony convictions, eleven misdemeanor convictions, and two probation violations. While many of his past crimes appear to be related to substance abuse, the trial court aptly observed that Nichols has taken no ownership of his drug and alcohol problems. Nor has he addressed his anger issues. As a result, Nichols remains exceedingly likely to reoffend.

[26] Sentencing revision is not supported by the nature of the offenses or Nichols's character. Accordingly, we do not find his five-year, partially suspended sentence inappropriate.

Judgment affirmed.

Riley, J. and Brown, J., concur.