

FILED
Mar 17 2015, 8:46 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Karen M. Heard
Vanderburgh County Public Defender's Office
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Graham T. Youngs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Steven M. Sandleben,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | March 17, 2015<br><br>Court of Appeals Cause No.<br>82A01-1407-CR-284<br><br>Appeal from the Vanderburgh Circuit Court.<br>The Honorable Kelli E. Fink, Magistrate.<br>Cause No. 82C01-1305-FD-553 |

**Sharpnack, Senior Judge**

## Statement of the Case

[1] Steven M. Sandleben appeals his conviction and sentence for stalking, a Class D felony. Ind. Code § 35-45-10-5 (2002). We affirm.

# Issues

Sandleben presents three issues for our review, which we restate as:

> I. Whether there was sufficient evidence to support his conviction of stalking.

> II. Whether the trial court abused its discretion by admitting certain evidence at trial.

> III. Whether his sentence was inappropriate.

# Facts and Procedural History

In August 2012, thirteen-year-old A.S. and her family entered a Target store to do some shopping. Sandleben began following A.S. when she entered the store, and he continued to follow her throughout the store. At some point, A.S.'s father noticed that Sandleben was taking video of A.S. with a small camera. A.S.'s father then contacted the store manager who asked Sandleben to leave the store.

In May 2013, A.S. and her family were again out shopping and entered a Michaels store. After entering the store, A.S.'s father saw Sandleben and recognized him as the man who had followed A.S. in Target the previous August. Sandleben again followed A.S. through the store taking video of her with a small camera. A.S.'s father called 911, and the police arrived at the store. Upon interviewing those involved, the police arrested Sandleben.

Based upon these two incidents, the State charged Sandleben with stalking, as a Class D felony. Following a jury trial, Sandleben was found guilty of the charge and was sentenced to thirty months. It is from this conviction and sentence that he now appeals.

## Discussion and Decision

### I. Sufficiency of the Evidence

When reviewing claims of insufficiency of the evidence, this Court neither reweighs the evidence nor assesses the credibility of the witnesses. *Brasher v. State*, 746 N.E.2d 71, 72 (Ind. 2001). Rather, we look to the evidence most favorable to the verdict and any reasonable inferences drawn therefrom. *Id.* We will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Dillard v. State*, 755 N.E.2d 1085, 1089 (Ind. 2001).

Sandleben contends that the State failed to present sufficient evidence that he committed the crime of stalking. The State charged Sandleben with stalking by alleging that he knowingly engaged in a course of conduct involving repeated harassment of A.S. by following her closely and taking pictures of her, which caused A.S. to feel terrorized, frightened, intimidated, or threatened. Appellant's App. p. 96.

To establish that Sandleben committed stalking, the State had to prove beyond a reasonable doubt that he (1) knowingly or intentionally (2) engaged in a course of conduct involving repeated or continuing harassment of the victim (3)

that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and (4) that actually caused the victim to feel terrorized, frightened, intimidated, or threatened. *See* Ind. Code § 35-45-10-1 (1993). Stalking does not include statutorily or constitutionally protected activity. *Id.*

[9] For purposes of the offense of stalking, "harassment" is defined as "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." Ind. Code § 35-45-10-2 (1993). Harassment does not include statutorily or constitutionally protected activity. *Id.* "'Impermissible contact' includes but is not limited to knowingly or intentionally following or pursuing the victim." Ind. Code § 35-45-10-3 (1993).

[10] The evidence in this case shows that within minutes of A.S. entering a Target store in August 2012, Sandleben began following her. At times, he got close enough to touch A.S. and followed her from aisle to aisle and from section to section. A.S. testified at trial that Sandleben did not appear to be shopping because he would "pick up something but [ ] when I would move he would quickly set it down and follow." Trial Tr., Vol. III, p. 121. A.S.'s father noticed that Sandleben began following A.S. as soon as they entered the store. A.S.'s father did his own shopping and then rejoined his wife and daughters approximately fifteen minutes later. At that time he noticed that Sandleben was still following A.S. A.S.'s father testified that Sandleben did not have a shopping cart or basket and was walking past A.S. within arm's length. A.S.'s

father watched Sandleben take out a small camera and take video as he went past A.S. A.S. testified that Sandleben is a complete stranger and that his actions made her scared and nervous. *Id.* at 117, 122. A.S.'s father contacted the store manager who asked Sandleben to leave the store.

[11] The evidence also shows that the following May A.S. and her family entered a Michaels store. Sandleben was there and began following A.S. throughout the store. A.S. testified that her father pointed out Sandleben, and she recognized him as the same man from Target the previous August. Again, Sandleben followed A.S. from section to section in the store. A.S.'s father testified that Sandleben again had a small camera in his hand as he followed her. A.S.'s father called 911, and officers arrived to investigate. A.S. testified that Sandleben's actions made her "nervous and scared again." *Id.* at 127. Thus, the evidence shows that Sandleben intentionally engaged in a course of conduct that involved repeated and continual harassment of A.S. in both Target and Michaels by intentionally following her and taking video of her throughout both stores, causing A.S. to feel terrorized, frightened, intimidated, or threatened.

[12] Sandleben cites *VanHorn v. State*, 889 N.E.2d 908 (Ind. Ct. App. 2008), *trans. denied*, in support of his sufficiency argument; however, his reliance on this case is misplaced. VanHorn's conduct consisted of parking on a public street near the victim's house and looking at the victim's house through binoculars on several occasions. On appeal, VanHorn argued that the State failed to establish that his conduct constituted "harassment" or "impermissible contact." While

not determining whether VanHorn's conduct was "contact," this Court held that his conduct was not impermissible and was therefore insufficient to support his conviction of stalking. Similarly, Sandleben asserts that the State failed to prove that his conduct constituted "impermissible contact." Yet Sandleben's argument ignores Indiana Code section 35-45-10-3, which states that impermissible contact includes knowingly or intentionally following or pursuing the victim. As we stated above, the evidence here was sufficient to support Sandleben's conviction of stalking based upon his intentional following of A.S.

[13] Sandleben also claims that his conduct is constitutionally protected and, thus, may not constitute stalking. Specifically, he maintains that taking video of an individual in a public place is a constitutionally protected activity.

[14] As a preliminary matter, the State contends that Sandleben has waived any federal claim by failing to provide an independent analysis under the federal constitution. We agree. "An appellant's failure to provide us with a separate analysis for each constitutional claim constitutes waiver." *Russell v. State*, 993 N.E.2d 1176, 1179 (Ind. Ct. App. 2013) (citing *Francis v. State*, 764 N.E.2d 641, 647 (Ind. Ct. App. 2002)).

[15] Turning to the state constitutional claim, article I, section 9 of the Indiana Constitution provides that "[n]o law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for the abuse of that right, every

person shall be responsible." Indiana courts have employed a two-step analysis when addressing article I, section 9 claims. *Ogden v. Robertson*, 962 N.E.2d 134, 141 (Ind. Ct. App. 2012), *trans. denied*. In the first step of the analysis, we must decide whether the state action has restricted a claimant's expressive activity. *Id.* Second, if it has, we must determine whether the restricted activity constitutes an "abuse" of the right to speak. *Id.*

[16] First, it was not Sandleben's act of videotaping that formed the basis for the stalking charge that he claims unconstitutionally restricted his right to speak. Rather, his intentional, repeated acts of harassing A.S. by following her were the basis for the stalking charge. His repeated acts of following A.S. in no way implicated his right to speak. Thus, on this basis alone, we determine that Sandleben's right to speak was not restricted. Nonetheless, we review his claim that his acts were expressive activity that is constitutionally protected.

[17] In determining, under the first step of the analysis, whether the state action has restricted a claimant's expressive activity, we look to whether the state has imposed a direct and significant burden on a person's opportunity to speak his mind, in whatever manner he deems most appropriate. *Whittington v. State*, 669 N.E.2d 1363, 1368 (Ind. 1996). As we noted above, the evidence shows that Sandleben was charged with stalking after closely following a teenage girl section by section and aisle by aisle through two different stores on two different occasions and videotaping her as he followed her. First, we note that the acts of videotaping and following someone are nonexpressive. Moreover, Sandleben cites to no legal authority in support of his contention that his

constitutionally protected right to expressive activity encompasses following and surreptitiously videotaping a teenage girl in close proximity as she attempted to shop with her family on two different occasions. Thus, there is no evidence to establish that Sandleben was engaging in an expressive activity, and, therefore, we need not address the second step of the analysis. There was sufficient evidence to support his conviction.

## II. Admission of Evidence

[18] Sandleben maintains that the trial court abused its discretion by admitting evidence obtained as a direct result of his alleged unlawful arrest. Specifically, Sandleben argues that his camera and cell phone, and any videos or photos contained therein, should not have been admitted into evidence at trial because there was no probable cause for his arrest.

[19] The trial court is afforded wide discretion in ruling on the admissibility and relevancy of evidence. *Nicholson v. State*, 963 N.E.2d 1096, 1099 (Ind. 2012). On appeal, evidentiary decisions are reviewed for abuse of discretion and are reversed only when the decision is clearly against the logic and effect of the facts and circumstances. *Id.*

[20] The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. Likewise, article I, section 11 of the Indiana Constitution protects citizens from unreasonable searches and seizures. Despite the similarity of the two provisions, Indiana courts interpret and apply

article I, section 11 independently from the Fourth Amendment. *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001).

### *Fourth Amendment*

[21] Generally, a judicially issued search warrant is a condition precedent to a lawful search. *Jackson v. State*, 669 N.E.2d 744, 747 (Ind. Ct. App. 1996). When a search is conducted without a warrant, the State must prove that an exception to the warrant requirement existed at the time of the search. *White v. State*, 772 N.E.2d 408, 411 (Ind. 2002).

[22] One such exception to the warrant requirement is a search incident to a lawful arrest. *Id.* Under this exception, the initial arrest must be lawful. *Culpepper v. State*, 662 N.E.2d 670, 675 (Ind. Ct. App. 1996), *trans. denied*. It follows, then, that evidence which is the product of an unlawful arrest is inadmissible. *Jackson*, 669 N.E.2d at 750. Probable cause to arrest is still required even though the circumstances fall within a warrant exception. *Id.* A law enforcement officer may arrest a person when the officer has "probable cause to believe the person has committed or attempted to commit, or is committing or attempting to commit, a felony." Ind. Code § 35-33-1-1(a)(2) (2011). Probable cause for arrest exists where, at the time of the arrest, the officer has knowledge of facts and circumstances that would justify a person of reasonable caution to believe a suspect has committed the criminal act in question. *Jackson*, 669 N.E.2d at 750. The amount of evidence necessary to meet the probable cause requirement is determined on a case-by-case basis. *Ortiz v. State*, 716 N.E.2d 345, 348 (Ind. 1999). As stated above, the offense of stalking requires a (1)

knowing or intentional (2) course of conduct involving repeated or continuing harassment of the victim (3) that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and (4) that actually caused the victim to feel terrorized, frightened, intimidated, or threatened. *See* Ind. Code § 35-45-10-1.

[23] Here, the officers responded to a call of a male following a juvenile female. The evidence reveals that at the time of Sandleben's arrest, the officers knew that Sandleben had followed A.S. around the Michaels store taking pictures or video of her on a small device he was attempting to conceal. Sandleben stayed close to A.S. throughout the store, never getting more than approximately five feet from her. Mot. Supp. Hrg. Tr., Vol. II, pp. 93-94; Aff. Prob. Cause, Appellant's App. p. 98. Further, the officers knew that the situation had caused A.S. to feel "creeped out and scared." Appellant's App. p. 99; Mot. Supp. Hrg. Tr., Vol. II, p. 94, 95. After giving Sandleben his *Miranda* rights, one of the officers asked Sandleben if he had been taking pictures of A.S., and he responded in the affirmative. Appellant's App. pp. 98-99; Trial Tr., Vol. III, p. 174. Also at this time, one of the officers knew of the existence of another incident, but he did not review the other incident before making the probable cause determination in this case. Mot. Supp. Hrg. Tr., Vol. II, p. 94. In addition, the officers had contacted a detective to be sure probable cause existed, and the detective had agreed that probable cause existed for the charge of stalking. *Id.* at 86. Based on our review of the facts known to the officers at the time of Sandleben's

arrest, probable cause existed to support his arrest for stalking, and, therefore, the search incident to his arrest did not violate his Fourth Amendment rights.

### *Article I, Section 11*

[24] Concluding that the search incident to Sandleben's arrest did not violate his Fourth Amendment rights, we now turn to the separate argument under the Indiana Constitution.

[25] Under Indiana constitutional analysis, we examine whether the State has demonstrated that, under the totality of the circumstances, the search or seizure was reasonable. *Holder v. State*, 847 N.E.2d 930, 940 (Ind. 2006). We construe our constitution liberally to ensure individuals' protection from unreasonable intrusions on privacy. *Id.* However, we also recognize that the citizens of our state are concerned with safety, security, and protection from crime. *Id.* "Thus, we have observed that the totality of the circumstances requires consideration of both the degree of intrusion into the subject's ordinary activities and the basis upon which the officer selected the subject of the search or seizure." *Id.* Accordingly, our determination of whether a search or seizure was reasonable turns on a balance of three factors: (1) the degree of concern, suspicion, or knowledge that a violation of law has occurred, (2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and (3) the extent of law enforcement needs. *Id.* Evidence which is the product of an unlawful arrest is inadmissible. *Hammond v. State*, 675 N.E.2d 353, 355 (Ind. Ct. App. 1996).

We incorporate our discussion of the evidence from the previous section where we determine there was probable cause for Sandleben's arrest for the charge of stalking. This evidence demonstrates two of the three balancing factors — suspicion that a violation of law has occurred and the extent of law enforcement's need to preserve evidence. The officers had probable cause to arrest Sandleben for committing the offense of stalking, and the photos and/or videos contained on Sandleben's phone and/or camera were probative evidence of Sandleben's conduct toward A.S. In contrast, the degree of intrusion imposed upon Sandleben was slight and is outweighed by the other two factors. Therefore, the search incident to Sandleben's arrest did not violate his state constitutional rights. Accordingly, the trial court did not abuse its discretion in admitting the evidence at trial.

## III. Inappropriate Sentence

As his final allegation of error, Sandleben asserts that his sentence of thirty months is inappropriate. However, Sandleben fails to present any cogent argument on the inappropriateness of his sentence. Instead, his argument is based upon the trial court's discretion in sentencing him.

Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (2007). An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual

deductions to be drawn therefrom. *Id.* When imposing a sentence for a felony, a trial court must enter a sentencing statement including reasonably detailed reasons for imposing a particular sentence. *Id.* at 491. A trial court abuses its discretion when it fails to issue a sentencing statement, gives reasons for imposing a sentence that are not supported by the record, omits reasons clearly supported by the record and advanced for consideration, or considers reasons that are improper as a matter of law. *Id.* at 490-91.

[29] Sandleben claims the court gave too little weight to the mitigating factors it found and gave too much aggravating weight to his recent voyeurism conviction. The relative weight given to aggravating and mitigating factors is not subject to review. *Id.* at 491. We find no abuse of discretion as to this issue.

[30] In addition, Sandleben contends that the trial court gave no weight to his remorse and to the nonviolent nature of the crime. The finding of mitigating circumstances is not mandatory but is within the discretion of the trial court. *Page v. State*, 878 N.E.2d 404, 408 (Ind. Ct. App. 2007), *trans. denied*. Further, the court is neither obligated to accept the defendant's arguments as to what constitutes a mitigating factor nor required to give the same weight to a proffered mitigating factor as does the defendant. *Id.* An allegation that the trial court failed to identify or find a mitigating factor requires the defendant on appeal to establish that the mitigating evidence is both significant and clearly supported by the record. *Id.*

[31] Sandleben's argument on the subject of his remorse is contained in a single sentence: "Likewise, Mr. Sandleben['s] remorse which the counselor testified to was never mentioned or appeared to be given any value by the court." Appellant's Br. p. 25. Thus, he has failed to make the required showing. Moreover, a trial court's determination of a defendant's remorse is similar to its determination of credibility: without evidence of some impermissible consideration by the trial court, we accept its decision. *Pickens v. State*, 767 N.E.2d 530, 535 (Ind. 2002). Here, it was the counselor's testimony, not Sandleben's, that Sandleben had "admitted morally that what he was doing was wrong." Sent. Hrg. Tr. p. 289. This statement amounts to an admission of guilt by Sandleben to his counselor more than an expression of remorse for his actions or their effect on A.S. We find no impermissible considerations by the trial court and no abuse of discretion in not finding Sandleben's alleged remorse as a mitigating circumstance.

[32] By definition, stalking is not a crime of violence, *see* Indiana Code section 35-45-10-5, and the fact that this crime was nonviolent was apparent from the evidence before the trial court. Conviction of a crime that does not contain violence as an element is not a circumstance requiring mitigating weight. *See Banks v. State*, 841 N.E.2d 654, 659 (Ind. Ct. App. 2006) (finding no abuse of discretion where trial court did not consider non-violent crime as mitigator), *trans. denied*. Therefore, the trial court did not abuse its discretion when it did not consider Sandleben's conviction of a nonviolent crime as a mitigating factor.

[33] Lastly, Sandleben claims that the trial court improperly used A.S.'s age as an aggravator. At sentencing, the trial court noted that A.S. was "well below the age of 18" when these incidents occurred and determined that was an aggravating circumstance. Sent. Hrg. Tr. p. 303. Sandleben argues that because A.S. was thirteen when these incidents occurred, her age is an improper aggravator pursuant to Indiana Code section 35-38-1-7.1(a)(3) (2012). Indiana Code section 35-38-1-7.1(a)(3) states that the court may consider as an aggravating circumstance the fact that the victim is less than twelve years of age. In addition, however, the same statute provides that the criteria in subsection (a) does not limit the matter the court may consider in determining the sentence. *See* Ind. Code § 35-38-1-7.1(c). We find no abuse of discretion on the part of the trial court.

[34] Although failure to present cogent argument on an issue waives that issue for appellate review, *see Lyles v. State*, 834 N.E.2d 1035, 1050 (Ind. Ct. App. 2005), *trans. denied*, we will proceed to address the merits of Sandleben's claim of inappropriate sentence. We may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we determine that the sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). A defendant bears the burden of persuading the appellate court that his or her sentence has met the inappropriateness standard of review. *Anglemyer*, 868 N.E.2d at 494.

[35] To assess whether the sentence is inappropriate, we look first to the statutory range established for the class of the offense. Here, the offense is a Class D

felony, for which the advisory sentence was one and one-half years, with a minimum sentence of six months and a maximum sentence of three years. Ind. Code § 35-50-2-7 (2012). Sandleben was sentenced to thirty months.

[36] Next, we look to the nature of the offense and the character of the offender. As to the nature of the current offense, Sandleben, on two different occasions, closely followed a teenage girl section by section and aisle by aisle through a store, surreptitiously videotaping her as he followed her and causing her to feel scared and nervous.

[37] With regard to the character of the offender, we note, as did the trial court, that Sandleben was convicted of two counts of Class D felony voyeurism just prior to the instant conviction. In addition, he has misdemeanor convictions for public voyeurism and possession of paraphernalia. The significance of a criminal history in assessing a defendant's character and an appropriate sentence varies based on the gravity, nature, proximity, and number of prior offenses in relation to the current offense. *Bryant v. State*, 841 N.E.2d 1154, 1156 (Ind. 2006). The nature of Sandleben's recent offenses and their temporal proximity to the current offense weigh heavily against his claim of an inappropriate sentence.

[38] Sandleben has not carried his burden of persuading this Court that his sentence has met the inappropriateness standard of review. *See Anglemyer*, 868 N.E.2d at 494. Accordingly, we do not find his sentence to be inappropriate in light of the nature of the offense and his character.

# Conclusion

[39] For the reasons stated, we conclude that there was sufficient evidence to support his conviction of stalking, that his arrest was lawful and therefore the trial court properly admitted evidence seized pursuant to his arrest, and that the trial court did not abuse its discretion in sentencing him and his sentence is not inappropriate given the nature of the offense and his character.

[40] Affirmed.

[41] May, J., and Mathias, J., concur.