## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 30 2015, 8:29 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Brian J. Johnson
Danville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Paula J. Beller
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Scott Ezman,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 30, 2015

Court of Appeals Case No.
32A01-1504-CR-151

Appeal from the Hendricks Superior Court.
The Honorable Stephenie LeMay-Luken, Judge.
Cause No. 32D05-1308-FD-833

**Friedlander, Senior Judge**

[1] Scott Ezman appeals his conviction of receiving stolen property as a Class D felony.[1] We affirm.

[2] Ezman presents one issue for our review, which we restate as: whether there was sufficient evidence to support his conviction of receiving stolen property.

[3] In June 2013, Brian Upton's 1994 green Chevrolet Blazer was stolen from his farm. In August 2013, Bruce Shannon noticed that his truck's license plate and a gas can from the bed of his truck had been stolen.

[4] On August 1, 2013, Ezman picked up his friend Brittany Stokes in an SUV, and they spent the day together. Stokes and Ezman had been friends for several years, and she had never seen him drive the green SUV prior to that day. Later in the afternoon, they drove the SUV to Ezman's sister's house and parked in the street. A neighbor, Kelly Kinkead, noticed a green SUV, that she did not recognize, pull up in front of her house. She watched as a man and a woman got out with a gas can, laundry baskets, and backpacks and began to dump and sort the laundry and the backpacks. When Kinkead looked out the window again, she noticed that the man was gone, a motor bike that had been in the back of the SUV was gone, the laundry and backpacks were picked up, and the woman was sitting in the passenger seat. Believing these events to be strange, Kinkead called the police. A few minutes later, Kinkead watched as the man

---

[1] Ind. Code § 35-43-4-2 (2009).

drove the SUV down the street and then turned around and came back while the woman rode in the passenger seat.

[5] Officer Harris responded to the call of suspicious activity of a green Chevrolet Blazer. He located the Blazer in front of Kinkead's home and noticed that it was running and that a woman, later identified as Stokes, was in the passenger seat. He performed a reference check of the Blazer's license plate and VIN through the BMV database on his in-car computer which returned information that both the license plate and the Blazer were stolen. Officer Harris spoke with Stokes and then, with the arrival of additional officers, approached the home of Ezman's sister. Officer Harris knocked on the doors and windows of the house for more than an hour. No one answered the door, but a dog barked loudly each time he knocked. Eventually, the officers contacted Ezman's sister, and she came home and unlocked the door. The officers entered and found Ezman sitting on the edge of the bed in his boxer shorts. Ezman was agitated and cursed at the officers. He asked them why they were there and stated that he had been "sleeping the whole time." Tr. p. 240. At the police department, Ezman was interviewed by Detective Bugler, who stated that Ezman "cursed a lot" and was "very argumentative," "belligerent," and "angry." *Id.* at 260.

[6] Ezman was charged with Count I receiving stolen property (Blazer) and Count II receiving stolen property (license plate), both Class D felonies. Following a jury trial, the court granted Ezman's motion for judgment on the evidence as to Count II, and the jury returned a guilty verdict on Count I. Ezman was sentenced to 365 days, and this appeal followed.

[7] Ezman's sole contention on appeal is that the State's evidence is not sufficient to sustain his conviction. When we review a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. *Sandleben v. State*, 29 N.E.3d 126 (Ind. Ct. App. 2015), *trans. denied*. Instead, we consider only the evidence most favorable to the verdict and any reasonable inferences drawn therefrom. *Id.* If there is substantial evidence of probative value from which a reasonable fact-finder could have found the defendant guilty beyond a reasonable doubt, the verdict will not be disturbed. *Labarr v. State*, 36 N.E.3d 501 (Ind. Ct. App. 2015). Further, it is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Tongate v. State*, 954 N.E.2d 494 (Ind. Ct. App. 2011), *trans. denied*.

[8] In order to convict Ezman of receiving stolen property, the State must have proved beyond a reasonable doubt that Ezman (1) knowingly or intentionally (2) received, retained, or disposed of (3) Upton's 1994 green Chevrolet Blazer (4) that had been the subject of theft. *See* Ind. Code § 35-43-4-2(b). In addition to proving the explicit elements of the crime, the State must also prove beyond a reasonable doubt that the person knew the property was stolen. *Fortson v. State*, 919 N.E.2d 1136 (Ind. 2010). Knowledge that the property is stolen may be established by circumstantial evidence; however, such knowledge may not be inferred solely from the unexplained possession of recently stolen property. *Id.*

[9] Ezman first challenges the State's evidence that the Blazer in his possession was the Blazer stolen from Upton. The evidence at trial showed that Upton's green Chevrolet Blazer was stolen in June 2013 and that he reported the theft to the

police. On August 1, 2013, Ezman was seen dumping laundry and backpacks out of a green Chevrolet Blazer parked in front of his sister's house. Officer Harris' BMV check of the VIN of the Blazer revealed that it was stolen. In addition, Upton testified that when his stolen Blazer was returned, his belongings were missing but there were tools and laundry in the vehicle that did not belong to him, as well as a backpack marked with the name A.J. Ezman. Stokes testified that Ezman has a son named A.J. The reasonable inference drawn from this evidence is that the stolen green Blazer in Ezman's possession on August 1, 2013, is the same Blazer that was stolen from Upton.

[10] Next, Ezman challenges as insufficient the evidence as to his knowledge that the Blazer was stolen because he claims there was no evidence that the Blazer was in a condition that would indicate such. In support of his argument, Ezman points to Officer Harris' response to the jury question, "Did you see if the truck had keys in it or something to get the truck started?" Tr. p. 242. Officer Harris stated, "The vehicle was running, so yes, the keys were inside, in the ignition." *Id.*

[11] Ezman is incorrect in his assessment of the evidence. Upton testified that when his Blazer was returned, the lock cylinder — the place where the key is inserted — was broken. He explained that due to the broken lock cylinder, the Blazer could not be turned off because, if it was turned off, "the battery would run down." *Id.* at 163. Officer Harris testified that when he located the Blazer outside Ezman's sister's house, it was parked and "still running." *Id.* at 221. Upton also testified the brake lines had been "ripped off." *Id.* at 163.

The evidence in this case reveals that the circumstances surrounding Ezman's possession of the Blazer include more than the mere unexplained possession of recently stolen property. A jury can certainly consider a broken lock cylinder to be indicative of an attempt to get a vehicle running without the benefit of a key, thus creating an inference that the Blazer was stolen. Furthermore, Officer Harris' testimony is unclear as to whether he actually saw keys in the ignition. Instead, his answer appears to be an assumption on his part based upon the simple fact that the Blazer was running at the time he located it. In addition, Ezman attempted to elude the police by refusing to answer the door when they were knocking for over an hour, causing the dog to bark repeatedly. When Ezman finally did speak to the police, he was belligerent and uncooperative. The result of the trier of fact carrying out its function of determining the weight of the evidence and the credibility of the witnesses is that it is free to believe whomever it wishes. *Klaff v. State*, 884 N.E.2d 272 (Ind. Ct. App. 2008). We must decline Ezman's invitation to reweigh the evidence and reassess witness credibility in his favor.

Affirmed.

Najam, J., and May, J., concur.