## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Feb 26 2016, 8:49 am
CLERK
of the supreme court,
court of appeals and
tax court

---

ATTORNEY FOR APPELLANT

Lawrence M. Hansen
Hansen Law Firm, LLC
Noblesville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Hiram S. Edens, Jr.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 26, 2016

Court of Appeals Case No.
29A02-1505-CR-516

Appeal from the Hamilton Superior Court.
The Honorable Steven R. Nation, Judge.
Cause No. 29D01-1408-FA-6800

**Darden, Senior Judge**

# Statement of the Case

[1] Hiram S. Edens, Jr., appeals his convictions by jury of rape, a Class A felony,[1] and sexual battery, a Class D felony.[2] We affirm.

# Issues

[2] Edens raises two issues, which we restate as:

    I.    Whether there is sufficient evidence to sustain Edens' convictions.

    II.    Whether Edens' sentence is inappropriate in light of the nature of the offenses and the character of the offender.

# Facts and Procedural History

[3] On the evening of November 15, 2011, sixty-six year old B.H. was in her house in Noblesville. She had inherited the house from her mother and was cleaning it out. As B.H. sorted through some items in a side room, she looked up and saw a man standing next to her. He wore a hoodie with the hood pulled up over his eyes and blocked the only exit from the room.

[4] B.H. was shocked to see the intruder. She pretended to know the person and asked what he was doing in the house. The man responded, "Come on, I want to show you something." Tr. p. 221. B.H. went to the living room, with the man following very closely. She considered fleeing through the front door, but

---

[1] Ind. Code § 35-42-4-1 (1998).

[2] Ind. Code § 35-42-4-8 (1998).

it was dark outside and her porch light was broken. Instead, B.H. surreptitiously retrieved her cell phone from her purse. The man repeated that he wanted to show her something.

[5] B.H. walked through her dining room and kitchen to an enclosed back porch, and the man continued to follow her closely. She thought about going out the back door, but she remembered that her car was parked out front. B.H. tried to call 911, but the intruder took her phone. She told him to leave, and he responded, "I don't know if I can trust you not to call the police." *Id.* at 225. B.H. then told him, "Go now and I won't call the police." *Id.* at 226.

[6] The intruder told B.H. to sit down. When she complied, he crouched down and touched her chest. B.H. said "No" and tried to push him away. *Id.* He grabbed her by the throat and choked her. B.H. struggled with him and said, "You don't want to do this." *Id.* at 228. He responded, "If you don't stop it, I'm going to put you to sleep." *Id.* Fearing for her life, she stopped fighting and complied with his demand to lay on the floor.

[7] Next, the intruder touched B.H.'s chest and removed her pants and underwear from one of her legs. He touched her vulva with his hand before getting on top of her and inserting his penis in her vagina. B.H.'s hip and back hurt, and she cried and moaned in pain. The intruder stood up and pulled his pants up. He told B.H. he was leaving and ordered her not to move or go anywhere.

[8] After the intruder left, B.H. got dressed and looked for her cell phone, but it was gone. She went to a neighbor's house for help. The neighbors called 911. B.H.

was taken to the hospital, where she underwent a sexual assault examination. A nurse took B.H.'s clothes and collected numerous swabs from her body. The police delivered the samples to the Indiana State Police Laboratory.

[9] The lab's employees generated a DNA profile from the samples to compare it against a database of known DNA profiles. A subsequent check of the database revealed that the intruder's DNA profile appeared to match Edens' profile. B.H. did not know Edens and had never met him prior to the sexual assault.

[10] The police obtained a search warrant to take a DNA sample from Edens. Detective Michael Haskett of the Noblesville Police Department executed the warrant, took a DNA sample, and questioned him. The interrogation was recorded. Edens denied knowing B.H. Detective Haskett showed Edens a photograph of B.H.'s house, and Edens said that he had never been there. He further stated that he thought the house was abandoned. The lab generated a DNA profile from Edens' sample and confirmed that it matched the profile that had been generated from the sexual assault kit.

[11] The State charged Edens with rape, a Class A felony; burglary resulting in bodily injury, a Class A felony; and sexual battery, a Class C felony. The State further alleged that Edens was a habitual offender and a repeat sexual offender.

[12] The jury trial was bifurcated. Edens testified at trial that he knew B.H., had done handyman work for her at her house on several occasions, and had consensual sex with B.H. on the day in question. In her testimony, B.H. denied knowing Edens, denied that he had ever done handyman work for her, and

denied that she had ever had a consensual sexual encounter with him.  The jury determined that Edens was guilty of rape and sexual battery.  The jury further concluded that he was guilty of residential entry, a Class D felony, as a lesser-included offense of burglary.  Next, after a separate trial, the jury determined that Edens was a habitual offender.  Upon Edens' motion, the court vacated the jury's guilty verdict as to residential entry.

[13]  At the sentencing hearing, the trial court entered a judgment of conviction for Class A felony rape.  In addition, the trial court entered a judgement of conviction for sexual battery as a D felony rather than a C felony, citing double jeopardy concerns.

[14]  In considering aggravating factors, the court identified Edens' extensive criminal history, including crimes of violence; his status as a probationer at the time of the offense; the fact that he had previously violated probation on eight occasions; the victim's age; and, Edens' apparent predisposition to target vulnerable persons (youths and the elderly) in committing crimes.  There were no mitigating circumstances.  As a result, the court sentenced Edens to serve fifty years for rape and three years for sexual battery.  The court further directed that those sentences would be served consecutively, plus a thirty-year enhancement for the habitual offender determination, for an aggregate sentence of eighty-three years.  Edens now appeals.

# Discussion and Decision

## I. Sufficiency of the Evidence

[15] Edens claims the evidence is insufficient to support his convictions because B.H. agreed to have sex with him. When we review a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. *Sandleben v. State*, 29 N.E.3d 126, 131 (Ind. Ct. App. 2015), *trans. denied*. Instead, we consider only the evidence most favorable to the verdict and any reasonable inferences drawn therefrom. *Id.* If there is substantial evidence of probative value from which a reasonable fact-finder could have found the defendant guilty beyond a reasonable doubt, the verdict will not be disturbed. *Labarr v. State*, 36 N.E.3d 501, 502 (Ind. Ct. App. 2015).

[16] To convict Edens of rape as a Class A felony, the State was required to prove beyond a reasonable doubt that Edens (1) knowingly or intentionally (2) had sexual intercourse with B.H. (3) by compelling B.H. (4) with deadly force or the threat of deadly force. Ind. Code § 35-42-4-1. A rape conviction may rest solely on the uncorroborated testimony of the victim. *Potter v. State*, 684 N.E.2d 1127, 1136 (Ind. 1997). To convict Edens of sexual battery as a Class D felony, the State was required to prove beyond a reasonable doubt that Edens (1) with the intent to arouse or satisfy his desires or the sexual desires of another person (2) touched B.H. (3) when B.H. was compelled to submit to the touching by force or the imminent threat of force. Ind. Code § 35-42-4-8.

[17]   There is ample evidence that B.H. did not consent to sexual activity with Edens. Edens, who was a stranger to B.H., entered her house one evening without her permission. He refused to leave, took her cell phone, and forced her to sit on the floor. When Edens tried to touch B.H.'s chest, she told him no and tried to push him away. Next, he choked B.H. and threatened to render her unconscious if she did not stop struggling. Upon hearing that threat, and fearing for her life, B.H. stopped struggling because, in her words, "I realized I had a choice, do I want to live or do I want to die." Tr. p. 228. Under this duress, B.H. followed Edens' instruction to lie down on the floor. After he partially removed her pants and underwear, he touched her vulva with his hand (committing sexual battery) and inserted his penis in her vagina (committing rape). B.H.'s hip and back hurt during the assault, and she cried and moaned in pain.

[18]   Edens claims that there is no evidence that corroborates B.H.'s testimony. He also argues that he testified at trial that he had performed handyman work for her on several prior occasions and that, on the day in question, he and B.H. had consensual sexual intercourse. These arguments are nothing more than requests to reweigh the evidence, which our standard of review forbids. There is sufficient evidence to sustain Edens' convictions.

# II. Appropriateness of Sentence

[19] Edens claims that his sentence is too long.[3] Article VII, section four of the Indiana Constitution gives Indiana's appellate courts the authority to review and revise sentences. That authority is carried out through Indiana Appellate Rule 7(B), which allows an appellate court to revise a sentence that is otherwise authorized by statute if, "after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

[20] The principal role of appellate review under Rule 7(B) is to attempt to leaven the outliers, not to achieve a perceived "correct" result in each case. *Garner v. State*, 7 N.E.3d 1012, 1015 (Ind. Ct. App. 2014). Thus, the key question is not whether another sentence is more appropriate, but whether the sentence imposed in the instant case is inappropriate. *Williams v. State*, 997 N.E.2d 1154, 1165 (Ind. Ct. App. 2013).

[21] It is the defendant's burden to persuade us that the sentence is inappropriate. *Id.* Whether a sentence is inappropriate depends upon the culpability of the defendant, the severity of the crime, the damage done to others, and many other circumstances that are present in a given case. *Harman v. State*, 4 N.E.3d 209, 219 (Ind. Ct. App. 2014), *trans. denied*. Thus, when assessing the nature of

---

[3] The State argues that Edens has waived this claim by failing to present cogent supporting arguments. We disagree and address the merits of Edens' claim.

the offense and the character of the offender, we may look to any factors appearing in the record. *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014).

[22] At the time Edens committed his crimes, the advisory sentence for a Class A felony was thirty years, with a maximum sentence of fifty years and a minimum sentence of twenty years. Ind. Code § 35-50-2-4 (2005). The advisory sentence for a Class D felony was one and a half years, with a maximum sentence of three years and a minimum sentence of six months. Ind. Code § 35-50-2-7 (2005). In addition, a person determined to be a habitual offender could have been sentenced to an additional fixed term not to exceed thirty years. Ind. Code § 35-50-2-8 (2005). The trial court imposed the maximum possible sentences and sentence enhancement upon Edens, to be served consecutively, for an aggregate sentence of eighty-three years. In general, the maximum possible sentence should be reserved for the worst offenders and offenses. *Stokes v. State*, 908 N.E.2d 295, 304 (Ind. Ct. App. 2009), *trans. denied*.

[23] Turning to the nature of the offenses, Edens entered B.H.'s house without permission when she was alone. He stalked her from room to room and took her cell phone away from her before compelling her to sit on the floor. Once B.H. was on the floor, Edens strangled her to end her resistance and sexually assaulted her. She believed that Edens was willing to kill her and feared for her life. After Edens was finished, he stole or hid B.H.'s cell phone to hinder her from seeking help. He had ample opportunity to leave the house before assaulting B.H. but chose to persist in his criminal conduct. In addition, rape

and sexual battery are serious violent crimes regardless of the victim's age, but targeting an older, more vulnerable person is particularly reprehensible.

[24] Turning to the character of the offender, Edens, who was fifty-five years old at sentencing, has an extremely lengthy criminal history. His habitual offender enhancement is based on prior felony convictions for sexual misconduct with a minor and residential entry. Beginning in 1980, Edens received other felony convictions for theft (three convictions) and burglary (two convictions). He also has misdemeanor convictions for crimes including voyeurism, public intoxication, possession of marijuana, battery, operating a vehicle while intoxicated, and conversion. Edens accrued his felony and misdemeanor convictions steadily over several decades, demonstrating that he was unable to refrain from committing crimes for more than a few years at a time. In addition, as the trial court noted, he has targeted the young and the elderly for sexual offenses, demonstrating a preference for preying on vulnerable persons.

[25] Edens was serving a sentence on work release when he was first questioned about these crimes. In addition, he was placed on probation on eight prior occasions and violated the terms of probation each time. Edens has been given numerous opportunities to change his behavior but, he has chosen not to end his criminal conduct. To the contrary, in this case he escalated his criminal behavior to a Class A felony. Based on this evidence, it is highly unlikely that a lesser sentence would induce Edens to change his behavior and comply with the requirements of the law.

Edens argues that his eighty-three-year sentence is "grossly excessive" because the evidence against him was sparse. Appellant's Br. p. 10. We disagree. As noted above, the evidence supporting his convictions is more than sufficient. Edens has failed to demonstrate that his sentence is inappropriate in light of the nature of his offenses and his character.

## Conclusion

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

Baker, J., and Crone, J., concur.