## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

**FILED**

Oct 05 2018, 8:18 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Derick W. Steele
Deputy Public Defender
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Clayton Wright,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 5, 2018

Court of Appeals Case No.
18A-CR-369

Appeal from the Howard Superior
Court

The Honorable George A.
Hopkins, Judge

Trial Court Cause No.
34D04-1610-F3-173

**Sharpnack, Senior Judge.**

# Statement of the Case

Clayton Wright appeals the sentence he received for his conviction of attempted battery, a Level 5 felony.[1]  We affirm.

# Issue

Wright presents one issue for our review, which we restate as:  whether Wright's sentence is inappropriate in light of the nature of the offense and his character.

# Facts and Procedural History

The facts, as contained in the probable cause affidavit and stipulated to by the parties, are that in October 2016, nineteen-year-old Wright was riding his bike and passed seventeen-year-old Grant Roberts, who was also on a bike.  After passing Roberts, Wright turned around, rode up in front of Roberts, and stopped, forcing Roberts to stop also.  Wright reached his hand into Roberts's back pocket where Roberts had his wallet.  When Roberts grabbed Wright's hand, Wright pulled out a knife.  Wright repeatedly told Roberts, "run your pockets bitch," meaning for Roberts to empty his pockets.  Appellant's App. Vol. 2, p. 16.

During the incident, Roberts was able to stop a passing car.  When the car stopped, Roberts was able to use his cell phone to call his father and tell him

---

[1] Ind. Code §§ 35-41-5-1 (2014), 35-42-2-1 (2016).

what was happening. Wright began riding away, and Roberts followed him. Eventually, Wright turned around to ride toward Roberts, and Roberts then turned around so Wright was following him. At that point, Roberts's father, Christopher, arrived. Christopher exited his vehicle with a handgun and confronted Wright. Wright lunged at Christopher, jabbed at him with a knife, and stated he was going to kill him. When Wright continued to jab at Christopher with the knife, Christopher fired one shot into the ground. Christopher re-entered his car to escape from Wright, who continued to lunge at him. When Wright lunged at Christopher again, Christopher used his car door to push him away. Wright stumbled back and fell over his bike. The police arrived and arrested Wright.

[5] Based upon this incident, Wright was charged with attempted robbery, as a Level 3 felony,[2] and criminal recklessness, as a Level 6 felony.[3] A third charge of attempted battery, as a Level 5 felony, was filed in September 2017, to which Wright pleaded guilty. The State dismissed the attempted robbery and criminal recklessness charges as well as charges pending in two additional cases, which resulted from Wright's misconduct in jail during his pretrial imprisonment for the present offenses. The court sentenced Wright to an executed sentence of

[2] Ind. Code §§ 35-41-5-1, 35-42-5-1 (2014).

[3] Ind. Code § 35-42-2-2 (2014).

three years in the Indiana Department of Correction (DOC). Wright now appeals.

## Discussion and Decision

[6] Although a trial court may have acted within its lawful discretion in imposing a sentence, article VII, section 6 of the Indiana Constitution authorizes this Court to review and revise sentences. This authority is implemented through Indiana Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we determine that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Thompson v. State*, 5 N.E.3d 383, 391 (Ind. Ct. App. 2014). The defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[7] Particularly, Wright challenges the appropriateness of his placement in the DOC for the full three years; he claims the appropriate sentence is the advisory sentence of three years "with two (2) years executed with credit for time served with the balance, if any, served through the Howard County Community Corrections In-Home Detention, and one (1) year suspended to supervised probation." Appellant's Br. p. 8.

[8] "The location where a sentence is to be served is an appropriate focus for application of our review and revise authority." *King v. State*, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008). Nonetheless, we note that it will be difficult for a

defendant to prevail on a claim that the placement of his or her sentence is inappropriate. *Fonner v. State*, 876 N.E.2d 340, 343 (Ind. Ct. App. 2007). "This is because the question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King*, 894 N.E.2d at 268. Moreover, a defendant challenging the placement of a sentence must convince us that the given placement is itself inappropriate. *Fonner*, 876 N.E.2d at 344.

[9] To assess whether the sentence is inappropriate, we look first to the statutory range established for the class of the offense. Here, the offense is a Level 5 felony, for which the advisory sentence is three years, with a minimum sentence of one year and a maximum of six years. Ind. Code § 35-50-2-6 (2014). Wright was sentenced to the advisory sentence of three years.

[10] Next, we look to the nature of the offense and the character of the offender. As to the nature of the current offense, we note that Wright accosted Roberts, tried to steal his wallet, and threatened him with a knife. When the juvenile's father arrived to rescue him, Wright confronted him with the knife and told him he was going to kill him. Wright was not deterred by a warning gunshot, and he only stopped when he was knocked to the ground and the police arrived. Wright had ample opportunity to end his course of misconduct but chose to persist.

[11] With regard to the character of the offender, we observe that Wright has amassed an extensive juvenile history. His juvenile offenses include receiving

stolen property, burglary, possession of paraphernalia, operating while intoxicated endangering a person, reckless driving, criminal recklessness, leaving the scene of an accident with serious bodily injury, and resisting law enforcement. In addition, eleven other charges were disposed of by way of dismissal or the State declining to prosecute. Through the juvenile court, Wright was placed on supervised probation, tracker probation, in secure detention, and he was committed to the Indiana Boys School.

[12] Upon passing into adulthood, Wright has continued his criminal behavior. Prior to this incident, he had acquired one misdemeanor conviction for resisting law enforcement. However, he committed the present offenses just a few months later, and then committed several criminal offenses while in jail on the present charges, in addition to accumulating a substantial number of disciplinary violations. While in jail, Wright was charged with the felony offenses of battery by bodily waste against a public safety officer, intimidation by threat to commit forcible felony, and battery against a public safety officer, as well as two counts of misdemeanor battery resulting in bodily injury. His disciplinary violations include resisting/interfering with a staff member, abusive language to staff, insolence, disobeying a direct order, assault on officer or staff member, misuse and/or destruction of county property, tampering with a locking or safety device, creating a minor disturbance, fighting, creating a major disturbance, communicating with inmates of another classification and/or gender, self mutilation or tattooing, malingering, threats/intimidation, posting items and/or writing on walls or fixtures, attempted escape, out of place in the

institution, sanitary violations, false informing, rioting, littering, assault, body punching/horseplay, interfering with count procedures, and contraband.

[13] The significance of a criminal history in assessing a defendant's character and an appropriate sentence varies based on the gravity, nature, and proximity of prior offenses in relation to the current offense, as well as the number of prior offenses. *Sandleben v. State*, 29 N.E.3d 126, 137 (Ind. Ct. App. 2015), *trans. denied*. Here, in addition to several juvenile offenses, Wright has an adult misdemeanor conviction, several felony and misdemeanor charges that were dismissed as part of the plea agreement in this case, and at least thirty incidents that resulted in numerous disciplinary violations while in jail over a period of fourteen months. The gravity, nature, proximity, and number of these offenses in relation to Wright's current offenses weigh heavily against his claim that his placement in the DOC is inappropriate. Wright's demonstration of disrespect for authority and rules while in jail awaiting trial in this cause supports a conclusion that a more lenient alternative sentence would not be effective for him.

[14] Wright further argues for different placement in order to have an "opportunity to receive community based services designed to prevent future criminal behavior" because he struggles with anger management and mental health issues. Appellant's Br. p. 7. The record reveals that the trial court granted Wright's requests for psychiatric evaluation and referral to the county mental health court; however, it does not contain any reports, conclusions, or any other documents with regard to this issue. In his brief, Wright merely states

that "[f]or reasons not outlined in the record, Wright was not able to complete the Mental Health Court." *Id.*

Thus, there is neither evidence of a particular mental health condition nor evidence that any such condition will be untreatable while he is in the DOC. *See, e.g.*, *Henderson v. State*, 848 N.E.2d 341, 344-45 (Ind. Ct. App. 2006) (finding no error in trial court's refusal to consider defendant's poor health as mitigator because she failed to present evidence that her multiple health conditions would be untreatable during incarceration). Moreover, no evidence links Wright's crimes and a mental illness. *See Corralez v. State*, 815 N.E.2d 1023, 1026 (Ind. Ct. App. 2004) (stating there must be nexus between defendant's mental health and crime in question in order for mental history to be considered mitigating factor).

## Conclusion

For the reasons stated, we conclude that Wright's sentence and placement in the DOC is not inappropriate.

Affirmed.

Crone, J., and Pyle, J., concur.