## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 11 2019, 9:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lauren A. Jacobsen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael L. Bower,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | December 11, 2019<br><br>Court of Appeals Case No.<br>19A-CR-1379<br><br>Appeal from the Decatur Superior Court<br><br>The Honorable Matthew D. Bailey, Judge<br><br>Trial Court Cause No.<br>16D01-1804-F5-530, 16D01-1710-F5-1032, & 16D01-1710-F6-1033 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Michael Bower (Bower), appeals his conviction for felony escape, a Level 5 felony, Ind. Code § 35-44.1-3-4(a).

We affirm.

# ISSUES

Bower presents this court with two issues on appeal, which we restate as:

(1) Whether the State presented sufficient evidence beyond a reasonable doubt to support his conviction; and

(2) Whether Bower's sentence is inappropriate in light of the nature of the offense and his character.

# FACTS AND PROCEDURAL HISTORY

In 2017, Bower's ex-wife, was granted a protective order against Bower. On October 1, 2017, Bower's ex-wife called the Decatur County Police Department and reported that Bower was following her in his orange Jeep. Detective Mike McNealy (Detective McNealy) "overheard the patrol units engage in a vehicle pursuit" of Bower and he joined the chase. (Appellant's App. Vol. IV, p. 36). The pursuit of Bower ended in Shelby County on I-74. When the police apprehended Bower, they questioned him as to whether he had a gun or if he had thrown it out. Bower claimed that he had left his gun at home. During the search of Bower's vehicle, "3 Springfield Amory pistol magazines containing live ammunition for a .40 caliber pistol" were located "in the middle console."

(Appellant's App. Vol. IV, p. 36). On the floorboard, there was "a paddle style holster for a Springfield XD pistol." (Appellant's App. Vol. IV, p. 36). No handgun was found inside Bower's vehicle or on Bower; however, the next morning, a homeowner called the police to report that she had found a Springfield XD handgun in her yard. The handgun was along the path that Bower had used while fleeing from the police.

[5] On October 3, 2017, under Cause Number 16D01-1710-F5-1032 (F5-1032), the State filed an Information, charging Bower with Level 5 felony stalking. Also, under Cause Number 16D01-1710-F6-1033 (F6-1033), the State filed an Information, charging Bower with Level 6 felony resisting law enforcement, Level 6 felony criminal recklessness, and Level 6 felony obstruction of justice. On December 11, 2016, in both Causes, Bower pleaded guilty on all Counts. For his Level 5 felony in F5-1032, the trial court sentenced Bower to five years, with two and one-half years to be served in home detention, and two and one-half years suspended to probation. For his three Level 6 felonies in F6-1033, the trial court sentenced Bower to concurrent sentences of two years on each Count, with 180 days to be served in home detention, and 540 days suspended to probation. Bower's sentences in F5-1032 and F6-1033 were to run consecutively.

[6] On December 11, 2017, the trial court issued an Order, setting out the terms of Bower's home detention. Among other things, Bower was ordered to remain in "the interior portion" of his home and "within the range of the monitoring equipment at all times" unless he was working, seeking employment,

undergoing medical treatment, attending a religious service, or performing approved community service work. (Appellant's App. Vol. IV, p. 58). On March 28, 2018, Bower began serving his home detention through Decatur Community Corrections. Bower met with the home detention supervisor and signed the home detention agreement (Agreement) which mirrored the probation Order. Bower's supervisor then worked out a work schedule with Bower, and Bower was fitted with a GPS monitoring device. Bower was advised on how to charge his GPS monitor when it issued a low battery alert.

[7] Three weeks later, on Saturday April 21, 2018, Bower's tracker notified Community Corrections that Bower was outside his home and the battery on his GPS monitor was low. Community Corrections officer Eric Adkins (Adkins) called Bower to advise Bower to charge his GPS tracker. Bower did not pick up Adkins' call. Adkins texted Bower to relay the same message, and he directed Bower to "contact [him] immediately." (Transcript Vol. II, p. 43). Bower did not return Adkins text. Later that evening, Adkins received a notification that Bower's GPS monitor had a "dead battery." (Tr. Vol. II, p. 43). Adkins contacted the Greensburg Police Department to report the incident.

[8] On Monday April 23, 2018, Adkins and other officers visited Bower's home and Bower's mother opened the door. Bower's mother informed the officers and Adkins that they were "too late" since Bower had "packed up and left." (Tr. Vol. II, p. 44). After obtaining consent from Bower's mother, the officers searched for Bower's GPS monitor, but they could not locate it. On April 24,

2018, under Cause Number 16D01-1804-F5-530, the State filed an Information, charging Bower with Level 5 felony escape. Also, a statewide arrest warrant was issued, and probation revocation petitions were simultaneously filed.

[9] On June 8, 2018, the Arizona Police Department received information that Bower was residing in Navajo County, Arizona. Sergeant Kyle Esparza (Sergeant Esparza) and another officer traced the location of Bower's cellphone to a car dealership in Snowflake, Arizona. On the same day, Sergeant Esparza went to the car dealership, and a man and a woman met him at the door. After Sergeant Esparza showed his badge and a photo of Bower, the woman walked across the showroom to where Bower was seated. Sergeant Esparza initiated contact with Bower, and he informed Bower that he was under arrest. Sergeant Esparza attempted to take Bower into custody, but Bower broke free, jumped over a chair, exited the showroom, and ran out on foot. Sergeant Esparza pursued Bower on foot down Arizona State Route 77. In the middle of a southbound traffic lane, Sergeant Esparza tackled and detained Bower. Sergeant Esparza searched Bower, but did not find Bower's GPS tracker.

[10] On, April 8, 2019, the trial court conducted a jury trial on Bower's Level 5 felony escape charge. At the close of the evidence, Bower was found guilty as charged. On May 6, 2019, the trial court conducted a sentencing hearing and sentenced Bower to an advisory executed sentence of three years in the Indiana Department of Correction.

[11] Bower now appeals. Additional information will be provided as necessary.

# DISCUSSION AND DECISION

## I. *Sufficiency of the Evidence*

[12]    Bower contends that there was insufficient evidence to convict him of the Level 5 felony escape. When reviewing a claim of insufficient evidence, it is well-established that our court does not reweigh evidence or assess the credibility of witnesses. *Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013). Instead, we consider all of the evidence, and any reasonable inferences that may be drawn therefrom, in a light most favorable to the verdict. *Id*. We will uphold the conviction "'if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.'" *Id*. (quoting *Davis v. State*, 813 N.E.2d 1176, 1178 (Ind. 2004)).

[13]    To convict Bower of Level 5 felony escape, the State was required to prove beyond a reasonable doubt that Bower "intentionally fle[d] from lawful detention." I.C. § 35-44.1-3-4(a). Lawful detention is defined by statute as:

> (1) arrest;
>
> (2) custody following surrender in lieu of arrest;
>
> (3) detention in a penal facility;
>
> (4) detention in a facility for custody of persons alleged or found to be delinquent children;

(5) detention under a law authorizing civil commitment in lieu of criminal proceedings or authorizing such detention while criminal proceedings are held in abeyance;

(6) detention for extradition or deportation;

(7) placement in a community corrections program's residential facility;

(8) electronic monitoring;

(9) custody for purposes incident to any of the above including transportation, medical diagnosis or treatment, court appearances, work, or recreation; or

(10) any other detention for law enforcement purposes.

(b) Except as provided in subsection (a)(7) and (a)(8), the term does not include supervision of a person on probation or parole or constraint incidental to release with or without bail.

(c) The term does not include electronic monitoring through the use of an unmanned aerial vehicle under [I.C. §] 35-33-5-9.

I.C. § 35-31.5-2-186(a).

[14] While Bower admits that he left Indiana and his home, he claims that was incapable of forming the necessary intent, thus, he did not intentionally flee from lawful detention. In his brief, Bower explains that

> In late May or early June of 2018, [he] awoke from a fugue state in Oklahoma. . . . He had no car, no clothes, no money and no

identification. He was stuck in waste deep mud and water in a ditch by the roadside and had to flag down traffic for assistance. He had no idea when or how he ended up in Oklahoma. He never had any intention of leaving Indiana.

Scared and alone, [he] spent two to three weeks in an Oklahoma shelter trying to figure how to get back to Indiana without getting in trouble. . . . He did not contact police or his home detention supervisor. Instead, [he] made contact with a business associate who took him to Arizona where he could make money and return to Indiana. While in Arizona, he was taken into custody by a plain clothes officer and transported to Indiana before he could return on his own accord.

(Appellant's Br. pp. 13-14). Bower's arguments amount to a request to reweigh the evidence, which we will not do. *See Walker*, 998 N.E.2d at 726.

[15] The State presented evidence that under the home detention Agreement Bower signed, he was required to be confined in his home unless he had authorization to leave. Further, Bower was required to wear his GPS monitor and charge it when it issued a low battery warning. On April 21, 2018, Bower's GPS tracker reported that its battery was low, and the gadget eventually shut off. When Adkins and other officers visited Bower's home on April 23, 2018, Bower's mother stated that they were "too late" since Bower had "packed up and left." (Tr. Vol. II, p. 44). A statewide warrant for his arrest was then issued. In June 2018, Bower was found working at a car dealership in Arizona. Bower's escape was effectuated by being absent from his home. *See Grabarczyk v. State*, 772 N.E.2d 428, 432 (Ind. Ct. App. 2002) (holding that a home detention order requires the person to stay at home). As such, we conclude that the State

presented sufficient evidence beyond a reasonable doubt to convict Bower of Level 5 felony escape.

## II. *Inappropriate Sentence*

[16] Bower contends that his three-year advisory sentence is inappropriate in light of the nature of the offense and his character. We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). The defendant has the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). The principal role of a Rule 7(B) review "should be to attempt to leaven the outliers and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). "Appellate Rule 7(B) analysis is not to determine whether another sentence is more appropriate but rather whether the sentence imposed is inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012) (internal quotation marks and citation omitted), *reh'g denied*. Whether a sentence is inappropriate turns on "the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224.

[17] When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Childress*, 848 N.E.2d at 1081. For his Level 5 felony escape, Bower faced a sentencing range of one to six

years, with the advisory sentence being three years. I.C. § 35-50-2-6(b). Bower received a three-year advisory sentence.

[18]  Turning to the specifics of his offense, following his guilty plea to various offenses under F5-1032 and F6-1033, Bower was placed on home detention in March 2018. During his first month, Bower attended all of his appointments and was in full compliance. On April 21, 2018, Bower failed to charge his GPS monitor, and it eventually turned off. When his probation officer and other law enforcement officers visited Bower's home, Bower's mother stated that Bower was long gone. Two months later, Sergeant Esparza located Bower in Arizona. When Sergeant Esparza informed Bower that he was under arrest, Bower went to great lengths to flee on foot and he had to be tackled in the middle of a highway. Based on the evidence, we cannot conclude Bower's three-year advisory sentence is inappropriate in light of the nature of the offense.

[19]  This court has determined that the significance of a criminal history in assessing a defendant's character and an appropriate sentence varies based on the gravity, nature, and proximity of prior offenses in relation to the current offense, as well as the number of prior offenses. *Sandleben v. State*, 29 N.E.3d 126, 137 (Ind. Ct. App. 2015), *trans. denied*. In addition to his convictions in F5-1032 and F6-1033, which included convictions for stalking, resisting law enforcement, and obstruction of justice, Bower has a criminal history dating to 2001 and that includes convictions for battery, criminal trespass (multiple), intimidation (multiple), conversion, and disorderly conduct. Notably, Bower has been subject to petitions to revoke his probation in previous cases.

Further, Bower has not shown remorse or accepted responsibility for his felony escape offense. Bower now claims that most of his crimes were attributed by his depression. However, the presentencing report indicated that Bower's mental health was "good." (Appellant's App. Vol. III, p. 115).

In light of the foregoing, Bower has failed to persuade us that his advisory three-year sentence is inappropriate in light of the nature of the offense and his character.

# CONCLUSION

For the reasons stated, we conclude that the State presented sufficient evidence beyond a reasonable doubt to convict Bower of Level 5 felony escape, and Bower's three-year sentence is not inappropriate in light of the nature of the offense and his character.

Affirmed.

Vaidik, C. J. and Bradford, J. concur